**SOUTHERN GAS & GASOLINE ENGINE
CO. et al. v. RICHOLSON et al.***
(No. 449.)

(Court of Civil Appeals of Texas. El Paso.
Dec. 10, 1915. Rehearing Denied
Jan. 12, 1916.)

**1. SALES ☞179—CONTRACTS—CONSTRUCTION.**
Where a contract for the sale and installation of machinery for irrigation declared that the agreement was subject to delays caused by fires, strikes, or other causes beyond the seller's control, and that receipt of material constituted a waiver of any claim for damages on account of delay in delivery, such agreement did not make receipt of material a waiver of delay in installing the machinery after delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. ☞179.]

**2. SALES ☞422—DAMAGE FROM DELAY—SUBMISSION OF ISSUES.**
Where rice growers who purchased irrigating machinery from plaintiffs sought damages for delay in installing the machinery, claiming they were prevented from making a crop, but made no claim for damages from delayed delivery, the refusal of the court to submit that question was not erroneous, though the contract declared that receipt of the machinery should constitute a waiver of delay in delivery; the issue of damages from delay in installation being submitted.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1204; Dec. Dig. ☞422.]

**3. APPEAL AND ERROR ☞262 — REVIEW — PRESENTATION OF GROUNDS IN COURT BELOW.**
Under the statute of 1913, the erroneous submission of special issues cannot be reviewed on appeal, where no bill of exceptions was reserved below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1582–1589, 1593–1595; Dec. Dig. ☞262.]

**4. APPEAL AND ERROR ☞1066 — REVIEW — HARMLESS ERROR.**
Where rice growers claimed damages for delay in installing irrigating machinery, and the evidence showed that the plant was never installed in accordance with the contract, a charge of delay in installation was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

**5. TRIAL ☞252—INSTRUCTIONS—APPLICABILITY.**
Where machinery for irrigation was never installed in accordance with the contract, and the purchasers sought damages for injuries to their crops, a charge on the question of unreasonable delay in installation was unnecessary.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ☞252.]

**6. APPEAL AND ERROR ☞216 — REVIEW — PRESENTATION OF GROUNDS IN COURT BELOW.**
Where damages were claimed for unreasonable delay in installing irrigating machinery and the seller desired the court to define the term "unreasonable delay," it must, to predicate error on the failure, request a proper charge.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞216; Trial, Cent. Dig. §§ 627–641.]

**7. SALES ☞181—PERFORMANCE OF CONTRACT —EVIDENCE.**
Where purchasers of irrigating machinery claimed that it was never properly installed and for that reason their crops failed, and the seller pleaded that the plant was properly installed,

but through the purchasers' negligence it was not put in operation sucessfully. evidence of improper installation was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. ☞181.]

**8. SALES ☞285 — WARRANTY—BREACH—NOTICE.**
Where a contract for the sale and installation of irrigating machinery required the purchaser, in case there should be any doubt that the material furnished was as warranted, to notify the seller in writing within 60 days from the date of invoice, a letter written by the purchaser that there seemed to be something wrong with the whole outfit, as it would not start, but that he did not know what the defect was, was a sufficient compliance with the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 806–808, 810; Dec. Dig. ☞285.]

**9. SALES ☞288 — WARRANTY — BREACH — WAIVER.**
While the execution of notes and mortgages by the purchaser of irrigating machinery after the installation of the plant might preclude the purchaser from denying the plant was as warranted, it is no defense to an action for damages arising on account of the failure of the machinery to furnish sufficient water to irrigate the purchaser's crops.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. ☞288.]

**10. BILLS AND NOTES ☞537—ACTIONS—ISSUES—SUBMISSION.**
Where the pleadings and evidence raise the question of failure of consideration for a note, such issue should be submitted to the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. ☞537.]

**11. APPEAL AND ERROR ☞742 — PRESENTATION OF GROUNDS OF REVIEW — PROPOSITIONS.**
Where appellants did not, by proposition or statement, indicate how the admission of immaterial or irrelevant evidence could have affected the jury, the receipt of such evidence must be considered as harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

**12. SALES ☞440—WARRANTY—BREACH—EVIDENCE.**
Where a purchaser of machinery intended to be used to irrigate a rice crop sought recovery for crop failure on the ground that the machinery did not pump the amount of water as guaranteed, owing to the seller's failure to properly install the machinery, thus preventing the raising of a crop, and the seller claimed that the crop failure was caused by the negligence and lack of knowledge of the one in charge of the crop, evidence that such person was a good farmer was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. ☞440.]

**13. SALES ☞442 — WARRANTY — BREACH— DAMAGES.**
Where the seller of machinery to be used in irrigating a tract of rice land knew that another was to be associated with the purchaser, and the machinery did not furnish the amount of water for irrigating purposes, as guaranteed, such third person's crop loss was part of the damages contemplated by breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. ☞442.]

**14. LIMITATION OF ACTIONS ☞172—RUNNING OF STATUTE — PERSONS ENTITLED TO URGE LIMITATIONS.**
Defendant and another joined in cultivating rice, the crop to be irrigated by machinery pur-

chased by defendant. The machinery, through defective installation, failed to furnish water, and there was a crop failure. *Held*, that only defendant could raise the question whether his associate could recover against him, and so, total crop loss being the damages in contemplation as result of breach of contract, the sellers of the irrigating machinery could not defeat the claim of defendant's associate for his crop loss.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 657; Dec. Dig. ☞172.]

15. SALES ☞288 — BREACH OF WARRANTY — WAIVER—ESTOPPEL—PAYMENT.

That a purchaser of irrigating machinery, with warranty, gave his notes to secure the purchase price, and the seller forebore to enforce collection, will not preclude the purchaser from recovering damages for loss of crops due to the failure of the machinery to properly irrigate the land.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. ☞288.]

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by the Southern Gas & Gasoline Engine Company against J. J. Richolson and another, who cross-complained, in which the Foos Gas Engine Company intervened. From a judgment for defendants on their cross-complaint, plaintiff and intervener appeal. Affirmed.

Bryan & Bryan and Andrews, Streetman, Burns & Logue, all of Houston, and Davis & Goggin, of El Paso, for appellants. Lane, Wolters & Storey, B. F. Louis, and Paul Kayser, all of Houston, and Townsend, Quin & Townsend, of Columbus, for appellees.

HARPER, C. J. This suit was filed August 30, 1911, by the Southern Gas & Gasoline Engine Company against J. J. Richolson, to recover on a note for $3,500, under the following allegations: That on August 14, 1910, said Richolson executed said note as part of the purchase money of certain machinery sold to him by the Foos Gas Engine Company, as evidenced by the written contract attached to plaintiff's petition; prayed judgment for the amount of the note, interest, attorney's fees, and for foreclosure of lien. By permission of the court, appellant Foos Gas Engine Company, December 22, 1911, intervened in the suit to recover on a note for $3,500, payable to Southern Gas & Gasoline Engine Company, and by said last-named company transferred to intervener, with lien therein provided for; prayed for judgment for the amount of the note, interest, and attorney's fees and for foreclosure of the lien, etc. Defendants, Richolson and Bunge, answered by general denial, and specially pleaded that they entered into a contract on December 10, 1909, with the Foos Gas Engine Company, by which plaintiffs were to install certain rice irrigating machinery, consisting of engines and pumps, etc.; that the notes sued on were given as part of the consideration of said contract, said plant to be installed by plaintiffs upon defendants' plan-

tation in ample time to irrigate defendant's crop of rice for the year 1910, and under a guaranty, as expressed in said contract, that said plant would furnish 8,000 gallons of water per minute when installed, and defendants further allege that plaintiffs wholly failed to carry out said contract, in that the plant was not installed until the early part of July, 1910, and that it did not produce the amount of water guaranteed, and was therefore inadequate for the purposes for which it was intended; that, relying upon the said contract, defendants planted and cultivated 800 acres in rice for the year 1910; that because of the delay in the installation of the plant and the failure of the plant to produce the amount of water guaranteed, on account of defective machinery, etc., they lost in crops, $20,000, etc. Plaintiffs, by supplemental petition, in answer to the foregoing by defendants, alleged: That the contract provided that the machinery was to be shipped 90 days from approval, February 10, 1910, and was so shipped, and further set up, as matter of defense, the guaranties and reservations in the contract, among others as follows:

"Should there be any doubt in the mind of the purchaser that the material furnished is as represented herein, he must advise the Foos Gas Engine Company in writing within 60 days from date of invoice, etc. No such complaint being received hereunder, or the continued use of such machinery after expiration of time mentioned shall constitute acceptance thereof."

That the plant was in fact ready for operation in June, 1910, but by reason of the negligence of defendant Richolson was not operated until July, 1910. That it had the pumping capacity guaranteed. That defendant failed to notify plaintiff within 60 days after receipt of the machinery that it was not as represented. As provided in the contract, it constituted a binding acceptance and a waiver of all damages. The cause was submitted upon special issues to the jury, and upon the answers thereto judgment was rendered for appellees for $16,193.05, from which this appeal is perfected.

#### Findings of Fact.

In December, 1909, Richolson entered into negotiations with C. W. Marlin, the agent of the Foos Gas Engine Company, also manager of the Southern Gas & Gasoline Engine Company, with the view to the installation of an irrigation plant for the purpose of irrigating approximately 800 acres of rice land in time for the year 1910, which resulted in the execution of the contract copied below. Said contract was accepted by the Foos Company December 10, 1909. The portions of the contract material to this opinion are:

"We propose to furnish you:

"One Foos vertical two cylinder engine, which shall develop 125 brake horse power, when using the following fuel: Producer gas made from commercial lignite such as Hoyt, Calvert or

Rockdale coal, to be shipped about ninety days from approval of order, speed of engine 225 R. P. M.

"We are to furnish an engineer to supervise the installation of the machinery furnished hereunder and instruct your operators. You are to build necessary foundations to our blueprints, place the machinery thereon, furnish all help and facilities required. You are to promptly remove all obstacles to the complete performance of our contract, or compensate for any loss or delay resulting therefrom (interlined), 30 days also superintend foundation.

"The plant, when in proper condition and correctly installed, adjusted and handled, is guaranteed to develop the power as rated at our factory, when using satisfactory fuel as herein specified. Upon written demand, within 60 days from date of invoice, we will make a regular Proney brake test after the plant is properly installed, the purchaser to furnish all facilities, material and assistance, and if the engine develops the power as above mentioned, under the conditions herein specified, he is to pay the entire expense thereof. We aim to obviate such difficulties by allowing an ample surplus of power above the rating in all cases.

"Should there be any doubt in the mind of the purchaser that the material furnished is as represented herein, he must advise the Foos Gas Engine Company, at Springfield, Ohio, in writing, within 60 days from date of invoice, stating specifically and fully wherein it fails to fulfill the specifications, whereupon we shall have 60 days within which to fulfill same. No such complaint being received hereunder, or the continued use of such machinery after expiration of time mentioned, shall constitute acceptance thereof.

"Guarantee. This plant is guaranteed to deliver 125 brake H. P. 24 hrs. on 6744 lbs. of commercial lignite coal such as Hoyt, Rockdale, etc., and to pump 8,000 gallons of water per minute when operating on a 40' lift. The engine will not use more than 1/1000 gallons of lubricating oil per H. P. hour.

"It is understood that this contract covers the complete agreement; that no agent has any authority to obligate us by any terms not herein expressed, and no modification shall be binding, unless in writing, and approved by our home office at Springfield, Ohio.

"This agreement is subject to delays caused by fires, strikes, accidents or other causes beyond our control, and no liability is assumed therefor. Receipt of material constitutes a waiver of any claim for damages on account of delay.

"Respectfully submitted,
"The Foos Gas Engine Co.
"By C. W. Marlin, Sales Agent."

Pursuant to said contract, the machinery was shipped and arrived at Altair, May 15, 1910. The machinery was installed and began pumping water some time between the 5th and 16th of July, evidence conflicting upon this point. The evidence was conflicting on the question of whether or not the plant produced the guaranteed 8,000 gallons per minute. While there is nothing in the contract which specifically fixes a time limit for the installation of the plant, the undisputed evidence shows that it was understood between the parties that it should be installed in time to irrigate the 800 acres for the year 1910.

The case was submitted on special issues, which issues and the answers thereto are as follows:

"Special Issue No. 1: When was the contract between the Foos Gas Engine Company and the defendant Richolson approved by the said company? Answer: January 3, 1910.

"Special Issue No. 2: Do you or not find from the evidence that there was any unreasonable delay on the part of the Foos Gas Engine Company in installing the machinery embraced in the contract between said company and J. J. Richolson? Answer: We find that there was.

"Special Issue No. 3: If you have answered that there was any unusual delay in the installation of the machinery embraced in the contract between the Foos Gas Engine Company and Richolson, then you will answer whether or not such unusual delay occasioned damage, if any, to the rice crop of defendant. Answer: We find that it did.

"Special Issue No. 4: Under the guaranty embraced in the contract between the Foos Gas Engine Company and defendant Richolson, the said company guaranteed that the plant described in said contract would pump 8,000 gallons of water per minute, continuously during pumping season, save ordinary and reasonable delay, when operated on a 40-foot lift, and in this connection, you will answer whether or not the said plant would pump the amount of water as guaranteed. Answer: We find that it would not.

"Special Issue No. 5: It is provided in the contract between the Foos Gas Engine Company, and defendant Richolson that, should there be any doubt in the mind of the purchaser that the material furnished is as represented in said contract, he must advise the Foos Gas Engine Company at Springfield, Ohio, in writing within 60 days from date of invoice; in this connection, you will answer whether or not the said Richolson did advise the Foos Gas Engine Company at Springfield, Ohio, in writing, within 60 days from the date of the invoice that the material was not as represented in said contract. Answer: We find that he did.

"Special Issue No. 6: Do you or not find from the evidence that the pumping plant furnished by the Foos Gas Engine Company, under the contract with J. J. Richolson, had the capacity to furnish sufficient water to the defendants upon the 500 acres planted in rice, which together with the rainfall during the season of 1910, would properly irrigate said land for the purpose of raising a crop of rice thereon during that year? Answer: We find that it did not.

"Special Issue No. 7: How much rice was raised and marketed by the defendants, or either of them, from the 500 acres of land during the season of 1910? Answer: We find 1,850 sacks of rice.

"Special Issue No. 8: If you have found that sufficient water was not, and could not, be pumped from the machinery furnished under the contract between the Foos Gas Engine Company and defendant Richolson, which, together with the rainfall during the season of 1910, could and would not produce an average crop of rice upon the 500 acres of land planted in rice during that year by the defendants, then you will answer what would have been an average crop of sacks of rice per acre upon the said 500 acres in 1910 if sufficient water had been furnished by the pumping plant, together with the rainfall, to raise such crop. Answer: We find that 15 sacks would have been an average yield in 1910.

"Special Issue No. 9: Do you or not find from the evidence that the actual crop which was raised and marketed from the 500 acres of land, which you have found was actually raised and marketed, was of an inferior grade to what such rice would have been had sufficient water been furnished by the said plant, and at the proper time, if you find that such was not done? Answer: We find that it was of inferior grade.

"Special Issue No. 10: You will find from the evidence what was the market value on the railroad cars at Altair, Tex., of the rice which was actually raised on the 500 acres, at the

time when it could and should have been marketed, in the year 1910. Answer: We find that such market value was $2.25 per sack.

"Special Issue No. 11: You will find from the evidence what was the market value at Altair, Tex., of the kind and quality of rice that you may find could and would have been raised and marketed in the 500 acres planted in rice by defendants, in 1910, at the time when such rice could and would have been marketed, if you found that other and different grades of rice could and would have been raised, had sufficient water been furnished by the plant, and at the proper time. Answer: We find that such market value was $3.50 per sack.

"Special Issue No. 12: Do you or not find from the evidence that at the time the plaintiff, the Southern Gas & Gasoline Engine Company acquired the note sued on herein by it, it had knowledge or notice that the pumping plant, in part payment for which said note was given, was not capable of producing the quantity of water which it was guaranteed to produce, if you have found that it was not capable, and that it was not properly installed so as to be capable of pumping the amount of water it was guaranteed to pump, if you find it was not so installed? Answer: We find that the Southern Gas & Gasoline Engine Company did have.

"Special Issue No. 13: If answering to other special issues which have been submitted to you, you have found that the defendants, or either of them, could and would have raised and marketed from the 500 acres of land, during the season of 1910, more rice than they did actually raise and harvest, had said defendants, or either of them, received the quantity of water which said plant was guaranteed to produce, if you have found that it did not produce the amount guaranteed, and if such water had been provided without delay in the installation of said plant, if you have found there was delay in such installation, and if said plant had been properly installed, if you have found it was so installed, then you will find from the evidence what additional expenditures the defendants, or either of them, would necessarily have made in order to cultivate, harvest, and market such additional crop, if any. Answer: We find that defendants would necessarily have incurred the additional expense of $2,260.00.

"Special Issue No. 14: Do you or not from the evidence find that a flow of 8,000 gallons of water per minute would be sufficient to properly irrigate 500 acres of rice land situated as defendant's land is situated, and with the season which prevailed during the year 1910, at and in the vicinity of this land? Answer: We find that it would.

"Special Issue No. 15: Was the plant capable of delivering 8,000 gallons of water per minute when operating on 40-foot lift continuously during pumping same and outside reasonable delay? Answer: No.

"Special Issue No. 16: Did or did not the plant pump sufficient water to irrigate 500 acres of land if water had been properly cared for and distributed without being wasted? In this connection you are charged that, even though you believe that the plant did not pump as much as 8,000 gallons per minute, yet if it did pump sufficient water, when properly distributed and cared for, to irrigate the defendant's 500 acres of rice, then plaintiff and intervener would not be liable to defendant for any damages to his crop of rice. Answer: We find it did not.

"Special Issue No. 17: Do you find from the evidence that at the time of the execution of notes by defendant there was or was not a settlement made? Answer: We find that it was.

"Special Issue No. 18: If you believe from the evidence that at the time of the execution of notes sued on, there was a settlement between the plaintiff and intervener and defendant, then state if such settlement did or did not embrace the damages to rice crop, if any you find. Answer: We find it did not.

"Special Issue No. 19: If from the evidence you believe defendant's rice crop was damaged, you will answer: What do you find from the evidence caused the damage to the defendant's rice crop? Answer: We find the cause to be the plant not being able to pump sufficient water.

"Special Issue No. 20: If from the evidence you find defendant's rice crop was damaged, then you will answer the following question: Was or was not such damage caused by defendant's failure to have and prepare the canals and laterals necessary to properly irrigate said rice crops? Answer: We find it was not.

"Special Issue No. 21: If you find defendant's rice crop was damaged, you will answer this question: Do you find from the evidence that such damage was caused by the neglect of defendant or his agents or employés or inexperience of defendant, his agents or employés? Answer: We find it was not.

"Special Issue No. 22: If you believe from the evidence defendant's rice crop was damaged, you will answer this question: Was or was not defendant's damage caused by the machinery being defective or its failure to pump the required number of gallons of water? Answer: We find it was."

## Opinion.

[1] By the first, second, and third assignments, appellants urge that, the contract between Richolson and the appellant engine company having provided that by the receipt of the material and machinery any damages on account of delay was waived, it was error for the court to permit witnesses to testify to facts tending to show unusual delay in the shipment and installation of the machinery, and consequently error to submit the question as was done in special issues. It will be noted that the only question submitted by issues 2 and 3 is: Was there any unreasonable delay in the installation of the machinery? And the court nowhere submits the question of delay in delivering the machinery upon the ground as an element of damages, and clearly the latter is the meaning of the clause of the contract invoked, viz.:

"This agreement is subject to delays caused by fires, strikes, accident or other causes beyond our control, and no liability is assumed therefor. Receipt of the material constitutes a waiver of any claim for damages on account of delay."

The language means delay in receipt of the machinery, and not in its installation; neither could the words "constitute a waiver of any claim for damages" in the connection used mean waiver of damages for failure of the plant to pump the warranted number of gallons of water per minute, and for failure to install in time for the season of 1910.

[2] The bill of exceptions is simply directed to the evidence of delay in delivery of the machinery upon the ground, and there is nothing in the pleading or the evidence adduced which would indicate that the appellees claimed, or expected to recover, any damages for injuries suffered by the crop prior to the date the machinery was delivered, but, on the other hand, both clearly show

that if the machinery had been installed within a reasonable time after actual delivery, and had met the guaranty as to the supply of water, there would have been no injury to the crop, and, it may be added, the charge of the court clearly confined the jury to the questions, delay in installation and whether it produced the water guaranteed.

The fourth is that the court erred in refusing to submit the following requested special issue: "How much damage or loss to the rice crop occurred prior to July 5, 1910?" The proposition being:

"The appellees having specially pleaded that their crop of rice had suffered because of the delay resulting from not shipping the machinery in 90 days from the date of approval of order, viz., January 3, 1910, and the evidence having shown and the jury having found that the crop had been damaged by reason of the delay in getting the water on the rice, it was material and necessary for the jury to find how much the crop was damaged by the delay, for if the appellants are correct in their construction of the contract that no damage can be recovered for delay in delivery, then the court should have had the damages arising after receipt and installation of the machinery on July 5th separated from the damage occurring prior to that time, in order that it might have a proper basis upon which to render judgment."

If we are correct in our interpretation of the pleadings and evidence above, that there is no attempt to recover damages for delay in delivery, but only for delay in installation and capacity of the plant, the court did not err in refusing the issues submitted because the machinery was delivered May 15th, and there may have been damages suffered between that time and its installation, July 5th, by reason of unreasonable delay in installation, and, if so, the jury could properly have found for such.

[3, 4] The fifth is that the court erred in submitting special issues 1, 2, and 3, with reference to delay in installing the plant. The record shows that no bill of exceptions was reserved to the action of the court in submitting these special issues. Therefore the error, if any, was waived under the statute, 1913, but the answer to the assignment upon its merits is that the appellant contracted to install the plant in time for the crop year of 1910, and the facts indubitably show that the plant was never installed in accordance with the contract; therefore a charge of delay in installation is harmless.

[5, 6] As to the sixth, it was immaterial that the court did not give a charge explaining the meaning of "unreasonable delay": First. Because in fact in this case there is no question that the delay was unreasonable. In fact, the evidence is conclusive that the plant was never installed so as to produce the water in accordance with the contract. Therefore, a charge, defining the term, could not have assisted the jury in any respect. Second. The appellants should have prepared and requested a proper charge in order for it to be reversible error. This they did not do.

Shumard v. Johnson, 66 Tex. 70, 17 S. W. 398.

[7] The seventh and eighth complain of the admission of testimony, over objection, to the effect that the plant was improperly installed. Appellee pleaded improper installation, and appellant pleaded that the plant was properly installed, but because of the negligence of the defendant, appellee Richolson, the plant was not put in operation until the 5th of July, at which time the plant operated successfully. The evidence was therefore admissible upon the issue as made by the pleadings.

[8] The ninth charges error in submitting special issues No. 5 because the letter introduced in evidence did not comply with the provision in the contract with reference to notice of defects. Among other things in the letter introduced it contains the following statements:

"There seems to be something wrong with the whole outfit, as it will not start. * * * In our contract, I see it is necessary for me to notify you of any defects in the machinery in 60 days after the invoice; this seems unfair as I did not receive the engine until the middle of May and now I don't know what the trouble is. So how can I tell what the defect is? I do know it won't work or pump."

This is certainly a sufficient compliance with the contract. It would seem to be unnecessary to give any notice, since the company had its agent upon the ground in act of installing the plant.

[9] The tenth complains of the refusal to submit the following special issue requested by appellants:

"Did the defendant Richolson execute the two notes sued on and the chattel mortgages securing same as being a final settlement agreed upon between himself and C. W. Marlin and C. A. Leavans, representing the plaintiff and intervener, whereby the defendant, Richolson, accepted the plant as being according to the contract."

The question was sufficiently submitted under special issues 17 and 18 copied above. The fact that the notes and mortgages were executed after the plant was installed might be evidence in the nature of a confession that the plant was as represented and warranted, but in no sense could it be a defense to an action of damages arising on account of its failure to produce 8,000 gallons of water or to meet the guaranty in any other respect.

[10] The eleventh reads:

"The court erred in not entering judgment for the plaintiff Southern Gas & Gasoline Engine Company for the sum of $1,817.22, admitted by the defendants to be due the plaintiff on its note sued on, and in paying off said note due the plaintiff Southern Gas & Gasoline Engine Company in damages caused by a breach of the contract between the intervener, Foos Gas Engine Company, and the defendant Richolson, there being no proper plea of failure of consideration, and no legal evidence of such failure of consideration upon which the court could base a judgment for failure of consideration, and it being clear that the refusal to enter the judgment in favor of the Southern Gas & Gasoline Engine Company was the result of deducting the amount of its note from the damages found by the jury

to have resulted from the breach of the written contract, to which the plaintiff was not a party."

The pleadings and evidence are sufficient to require the court to submit the question of failure of consideration; therefore it was not error to refuse to enter judgment for appellants.

Assignment 18½ raises the same question and is overruled for the same reason.

[11] The twelfth assignment is as follows:

"The court erred in permitting the witness L. P. Bunge to testify, over the objection of the plaintiff Southern Gas & Gasoline Engine Company that Mr. Marlin stated, in 1911, that, 'as long as you keep Mr. Cook there, you ain't going to get no water,' which was wholly irrelevant and immaterial, and could only serve to prejudice the jury against plaintiff and intervener."

The appellants have not, by proposition or statement, indicated how this statement would or might have influenced the jury in arriving at an improper verdict; and, in view of the finding that the engine would not pump the amount of water guaranteed after different men had tried to make it do so, if error, it certainly was harmless.

[12] It was not error to permit witness to testify that the general reputation of defendant Bunge was good as a farmer, because he was in charge of the crop. The appellants charged in its petition that the failure to raise a crop was due to negligence and lack of knowledge of how to take care of the canals and to place the water on the rice, and thus it became a vital question whether the man in charge was in fact capable to, and did properly, care for the crop.

[13] The fourteenth:

"The court erred in permitting the witnesses Richolson and Bunge to testify, over the objection of plaintiff and intervener, with reference to the facts concerning the defendant Bunge's one-half of said crop, and any damages thereto, because neither plaintiff nor intervener were in any manner bound or under any legal liability to the defendant Bunge by reason of the contract entered into between the intervener and the defendant Richolson, and the defendant Bunge was without any right to recover on said contract, he not having been a party thereto, all of which is shown by plaintiff and intervener's bill of exception."

There is no pleading to support this defense. It clearly appearing that the item of damages to Bunge was contemplated, or should have been, by the warranty that the plant would furnish water for 800 acres of land, and the evidence clearly showing that the plant was to be installed in time for 1910 crop, and that the 300 acres for which Bunge claims loss was a part of the 800 acres to be and was planted, it was not error to permit the witnesses to testify as they did. Southern Gas & Gasoline Engine Co. v. Peveto, 150 S. W. 279.

[14] The fifteenth assignment raises the question of limitation of the claim of Bunge against Richolson; for that reason Bunge cannot recover; could only be raised by Richolson. Columbia, etc., v. Strawn, 93 Tex. 48, 53 S. W. 342. The other questions suggested in the assignment make it multifarious, but they are disposed of by what is said under the fourteenth.

[15] The sixteenth charges that the court erred in refusing to submit the following special issue requested by the plaintiff:

"Did the intervener Foos Gas Engine Company forbear bringing suit and foreclosing its note falling due on November 15, 1910, because of the promises of the defendant Richolson to pay the note, as evidenced by his letters to the intervener introduced in evidence?"

Submitted as a proposition. We fail to see how an affirmative answer to the question could affect the judgment of the court. That Richolson secured the payment of the purchase price did not estop him from recovering damages for the failure of the machinery to meet the written contract of guaranty.

The seventeenth is:

"The court erred in refusing to submit the fourth issue or question requested by plaintiff and intervener, reading as follows: 'Did the defendant Richolson, by reason of his promises after November 15, 1910, to the plaintiff and intervener to pay his notes, get the benefit of the chance to sell his entire tract of land, together with the plant and the use of the plant, for the purpose of trying to raise a crop for the year 1911?'"

As held under the sixteenth assignment, we fail to see how the promise to pay, or even payment of, the purchase price of the pumping plant would estop the appellees from claiming damages for loss of crops by reason of the defect in the machinery and delay in its installation, and appellant has not, by proposition, pointed out how an estoppel takes place. Such acts certainly cannot be such representations as would cause the appellants to act upon those to their detriment in a future suit for damages for loss of crops occasioned by defects and delay.

If we understand the eighteenth assignment, it is to the same effect, and is overruled for the same reasons.

The nineteenth urges that the verdict of the jury is contrary to the law and the evidence for the reasons asserted in the former assignments. Is overruled for the reasons assigned under the several assignments as discussed above.

Being no error in the record, the judgment is affirmed.