SOUTHERN GAS & GASOLINE ENGINE
CO. et al. v. RICHOLSON et al.
(No. 96–2921.)

(Commission of Appeals of Texas, Section B.
Nov. 19, 1919.)

1. CONTRACTS ⬤➾169 — CONSTRUCTION IN
LIGHT OF CIRCUMSTANCES.

The rule that the contract must be read in
the light of surrounding circumstances in ar-
riving at a just interpretation of the terms does
not admit of a violation of the express language
which the parties have employed in defining
their obligations, nor the reading into the con-
tract of terms which its express provisions ex-
clude.

2. SALES ⬤➾90—MERGER OF NEGOTIATIONS IN
WRITTEN CONTRACT.

Seller, having agreed by writing to furnish
certain specified machinery and do certain speci-
fied things with reference to the installation of
the irrigation machinery sold, was not bound
beyond the obligations specifically imposed,
since all negotiations relating to installation
of the machinery were merged in the written
contract.

3. SALES ⬤➾85(1)—OBLIGATION OF SELLER OF
IRRIGATING MACHINERY TO INSTALL IT.

Seller of irrigating machinery, having agreed
by written contract that the writing was the
complete agreement to ship machinery within
certain time, to furnish blueprints for the
foundations, and to provide an engineer to
supervise the installation, and instruct buyer's
operators, was not required to install the ma-
chinery, being bound to do only those things
specified in the contract.

4. SALES ⬤➾179(3)—ACCEPTANCE AS WAIVER
OF DELAYED DELIVERY.

Under irrigating machinery sales contract,
providing that "receipt of material constitutes
a waiver of any claim for damages on account
of delay," buyer could not recover damages re-
sulting from delayed installation of the machin-
ery due to delay in delivery thereof; the claim
for such damages having been waived by accept-
ance of machinery upon delayed delivery.

5. TRIAL ⬤➾343—CONSTRUCTION OF VERDICT
IN LIGHT OF TESTIMONY.

Verdict, in being construed, should be view-
ed in the light of the testimony.

6. SALES ⬤➾422—CONSTRUCTION OF VERDICT.

Verdict for buyer of irrigating machines for
damages to rice crop resulting from seller's
breach of contract *held*, in view of the findings,
to embrace damages for delayed installation of
machinery, which damages buyer, by acceptance
of the machinery upon delayed delivery, had
waived under stipulation of the contract.

Error to Court of Civil Appeals of Eighth
Supreme Judicial District.

Action by the Southern Gas & Gasoline En-
gine Company against J. J. Richolson and an-
other, in which the named defendant cross-
complained and the Foos Gas Engine Compa-
ny intervened. Judgment for named defend-
ant on his cross-complaint, affirmed by Court
of Civil Appeals (181 S. W. 529), and plaintiff
and intervener bring error. Judgments of
district court and Court of Civil Appeals re-
versed, and cause remanded.

Bryan & Bryan and Andrews, Streetman,
Burns & Logue, all of Houston, for plaintiffs
in error.

Lane, Walters & Storey and B F. Louis,
all of Houston, Townsend, Quinn & Town-
send, of Columbus, and Paul Kayser, of Hou-
ston, for defendants in error.

McCLENDON, J. The controversy in this
case arose out of an alleged breach of con-
tract of sale of certain machinery for the
irrigation of a rice farm. For convenience,
the parties will be designated as in the trial
court: Southern Gas & Gasoline Engine Com-
pany, plaintiff; Foos Gas Engine Company, in-
tervener; J. J. Richolson and L. P. Bunge,
defendants. Intervener was a foreign corpo-
ration, engaged in the manufacture of ma-
chinery. Plaintiff was a Texas corporation,
engaged in the sale of machinery, and acted
as agent for intervener in Texas. The usual
course of business between the two corpora-
tions was for plaintiff to purchase the ma-
chinery from intervener and make sales di-
rect to purchasers in its own name. The con-
tract in question was made between inter-
vener and defendant Richolson, the owner
of the farm, because Richolson wanted the
responsibility of intervener behind the con-
tract. The machinery was paid for partly
in cash upon its delivery; the balance in two
notes of $3,500 each, payable to the order of
intervener, secured by chattel mortgage on
the machinery. One of these notes was
transferred to plaintiff as its share in the
transaction.

Plaintiff brought this suit against Richol-
son upon its note and for foreclosure. In-
tervener sued upon its note, and joined in
the prayer for foreclosure. By way of cross-
action, defendant Richolson sought damages
for an alleged breach of the contract of sale,
claiming failure on intervener's part to in-
stall the machinery in time to irrigate the
1910 crop and failure of the plant to supply
the amount of water guaranteed in the con-
tract. Defendant Bunge was interested with
Richolson in cultivating part of the land.
Upon a verdict upon special issues, the trial
court rendered judgment in favor of the de-
fendant Richolson for $16,193.05, which sum
was arrived at by calculation from the facts
found in the verdict after deducting the
amount of the two notes sued upon and an
agreed credit. This judgment was affirmed
by the court of Civil Appeals, Eighth Dis-
trict. 181 S. W. 529.

The question of leading importance is

whether the judgment embraces items of damage for which defendant was not bound under the contract. This question embraces two elements: First, whether under the contract the intervener was obligated to install the machinery; and, if not, second, whether the verdict includes damages for failure to install in time to water the crop.

Defendant's cross-action was grounded in breach of contract alone; the contention being, among others, that intervener was obligated to install the machinery. This contention is rested on two propositions: First, that the contract expressly, or by necessary implication, imposed this obligation; and, second, that the contract, when read in the light of surrounding circumstances, must be so construed. The contract, which was in the form of a proposal, and was accepted by intervener on January 3, 1910, contains the following provisions:

"We propose to furnish you:

"One Foos vertical two-cylinder engine, which shall develop 125 brake horse power. when using the following fuel: Producer gas made from commercial lignite such as Hoyt, Calvert, or Rockdale coal. To be shipped about 90 days from approval of order."

"Erecting.—We are to furnish an engineer to supervise the installation of the machinery furnished hereunder and instruct your operators. You are to build necessary foundations to our blueprints, place the machinery thereon. furnish all help and facilities required. You are to promptly remove all obstacles to the complete performance of our contract. or compensate for any loss or delay resulting therefrom. [Interlined:] 30 days; also superintend foundation."

"Guarantee.—This plant is guaranteed to deliver 125 brake H. P. 24 hours on 6,744 lbs. of commercial lignite coal, such as Hoyt, Rockdale, etc., and to pump 800 gallons of water per min. when operating on a 40-foot lift. The engine will not use more than $1/1000$ gallons of lubricating oil per H. P. hour.

"We reserve the right to alter the above equipment to best suit the fuel used and operating conditions."

"It is understood that this contract covers the complete agreement that no agent has any authority to obligate us by any terms not herein expressed, and no modification shall be binding, unless in writing, and approved by our home office at Springfield, Ohio.

"This agreement is subject to delays caused by fires, strikes, accidents, or other causes beyond our control; no liability is assumed therefor; receipt of material constitutes a waiver of any claim for damages on account of delay."

In the specifications attached to the contract it is provided:

"The plant is to be complete, less foundations, hauling, common labor, buildings, and flumes."

[1, 2] The evidence conclusively shows that both parties to the contract had in contemplation that the plant was to be used for supplying water to irrigate a rice crop to be planted upon defendants' farm in 1910. That the contract must be read in the light of the surrounding circumstances, in arriving at a just interpretation of its terms, may be conceded; but this rule does not admit of a violation of the express language which the parties have employed in defining their obligations, nor the reading into the contract of terms which its express provisions exclude. In interpreting the several obligations of the parties, we may measure the reciprocal duties imposed by reference to the main object of accomplishment. The parties have, however, specifically provided what each was to do under the contract. Intervener's obligations may, be summarized: To furnish certain specified machinery, which, when installed, was guaranteed to produce certain specified results under given conditions; to ship the machinery within about 90 days of acceptance of the proposal; to furnish blueprints for the foundations; to provide an engineer to supervise the installation and instruct defendant's operators. Defendant was to build the foundations according to the blueprints furnished, place the machinery thereon, furnish all help and facilities required, and promptly remove all obstacles to complete performance of the contract. Clearly a failure on the part of intervener to perform any part of what it therein bound itself to do would create a corresponding right in defendant to exact compensatory damages for such failure, measured by the effect of that failure upon the main object in contemplation of the parties. Beyond the obligations thus specifically imposed, in so far as erecting the plant is concerned, intervener cannot be held bound. This would be necessarily true, whether or not the contract had provided in specific terms that it embraced the entire agreement of the parties, under the familiar rule that, where a contract is reduced to writing, it will be held to merge all negotiations of the parties upon the subject dealt with. In this contract, however, the parties have specifically stipulated that the writing covers the complete agreement, and no agent has authority to obligate intervener by any terms not therein expressed.

[3, 4] It seems to us plain that the contract did not bind intervener generally to install the machinery or plant, but only bound it in this respect to do the specific things therein provided as above stated. Some of these specific obligations no doubt necessarily constituted portions of the sum total of what might be construed to embrace the installation of the plant, and all of them had a bearing upon the installation, or at least upon the time of installation. The furnishing of the machinery and its shipment to destination were essential requisites to installation, as the latter could not be begun until the machinery arrived. The same is true with reference to the time of providing the blueprints for the construction of the foundations. This element of delay in installation, however, is

eliminated as a recoverable item of damage, in that, as appears to be conceded by defendant, the acceptance of the machinery upon arrival constituted a waiver of any claim for damages on account of delay theretofore existing, under express stipulation of the contract. The only other obligation in the contract on the part of intervener, affecting the question of installation, was to furnish an engineer. It is not claimed that this was not done, or that the engineer was incompetent or derelict in his duties. The evidence would warrant a finding, however, that some of the items furnished by intervener were not adequate, or were defective, and that delay in final installation was caused by supplying these deficiencies. The failure of intervener to perform any of these obligations provided for in the contract would necessarily impose upon it the obligation to respond in damages; but we are unable to deduce from the entire contract that there was any general obligation on the part of the intervener to install the machinery; and to measure intervener's obligation by the damages resulting to the crop from a failure to have water supplied in time, unless such failure was the result of a breach of the specified obligations of intervener imposed by the contract, would be to read into the contract an obligation which its terms do not impose, and which by implication they necessarily exclude. We conclude that the contract does not bind intervener generally to install the machinery.

[5] The next question is whether the judgment embraces elements of damage for which intervener was not obligated under the contract. This question calls for a construction of the verdict, to arrive at which fairly it should be viewed in the light of the testimony. The verdict is set out in full in the opinion of the Court of Civil Appeals. In so far as pertinent to the instant inquiry, it embraces the following findings:

That there was unreasonable delay on the part of intervener "in installing the machinery" (No. 2); that "such unusual delay occasioned damage * * * to the rice crop of defendant" (No. 3); that the plant would not pump the guaranteed amount of water (No. 4); that the guaranteed capacity of the plant would have been sufficient with the rainfall to properly irrigate the land (No. 14); that it was not of capacity to deliver said amount (No. 15); that it did not furnish sufficient water to irrigate the land if properly cared for and distributed without being wasted (No. 16); that the cause of damage to defendant's rice crop was "the plant not being able to pump sufficient water" (No. 19); and "by the machinery being defective, or its failure to pump the required number of gallons of water" (No. 22); that the damage to the crop was not caused by defendant's failure to prepare necessary canals and laterals, or by any neglect or inexperience of defendant, his agents, or employés (Nos. 20 and 21).

The amount of recovery is arrived at by taking the answers of the jury to the special issues, in which they estimate the amount of rice actually raised on the land (No. 7); the average yield per acre "if sufficient water had been furnished by the plant, together with the rainfall, to raise such crop" (No. 8); the reduction in grade of the crop actually raised under what it would have been, "had sufficient water been furnished by said plant (No. 9); the market value of the rice actually raised (No. 10); the market value of the rice that would have been raised, "had sufficient water been furnished by the plant, and at the proper time" (No. 11); the additional cost of production of the additional crop which would have been raised, had the guaranteed amount of water been produced by the plant, "and if such water had been provided without delay in the installation of said plant" (No. 13).

The evidence is quite voluminous, and in many respects sharply conflicting. It shows that the proposal was accepted January 3d, that the machinery was not shipped until the latter part of April, and not received at destination until May 14th or 15th. The evidence was conflicting as to the time installation was completed; but, whatever date we take, as shown by the evidence, there was testimony strongly pointing to the conclusion that the crop was needing water for some time before the installation was consummated.

[6] We think, under a fair construction of the above jury findings, the amount of recovery awarded necessarily includes an indeterminate amount of damage to defendant's rice crop, occasioned by not having the plant installed as early as water was needed. It is true that, in answer to special issues 19 and 22, the jury find that the damage to the crop was occasioned by insufficiency in capacity of the plant. If the answers to these special issues be construed as a finding that the entire damage previously estimated was referable to this incapacity alone, then the answers to said special issues are directly in conflict with the answers to special issues 2 and 3, in the latter of which the jury find that the unreasonable or unusual delay of intervener in installing the machinery occasioned damage to the crop. In special issue No. 11 the gross value of the crop that would have been raised, "had sufficient water been furnished by the plant and at the proper time," is estimated, and in No. 13 the additional cost of raising such additional crop as would have been raised "if such water had been provided without delay in the installation of said plant." The figures given in these estimates form two of the essential bases of the judgment, and it is quite clear that the net amount of defendant's recovery necessarily embraces damage occasioned by a failure to have sufficient water in time for the requirements of the crop. What this

amount is the verdict furnishes no basis for estimation.

As above shown, one of the necessary elements in having the water at any given time was the delivery of the machinery, which was delayed beyond the contract period. The delay thus occasioned has, as above shown, been eliminated as a recoverable item of damage. We think it clear from the verdict that it embraces all damages occasioned to defendant's crop by a failure to have water in sufficient quantities at the time required by the crop, the effect of which was to impose upon the intervener a guaranty that the plant would be installed in time to supply such water; a burden not imposed by the contract, except in so far as its failure to perform specific obligations undertaken by it may have contributed to such failure.

Nor can it be said that the answers of the jury to the twentieth and twenty-first special issues confine the damages found to the failure to perform the obligations imposed by the contract upon intervener. Those issues relate solely to acts of defendant regarding the construction of canals and laterals, and to neglect or inexperience of defendant, his agents and employés. The evidence was conflicting upon the issue of the time in which the canals and laterals were constructed, as well as their manner of construction, and upon the issue of whether the plant was properly operated. The other issues found by the jury are clearly framed upon the theory that intervener was obligated to install the machinery in time to water the rice crop, and we are unable to conclude that this general obligation is in any way limited by the twentieth and twenty-first special issues, which, when construed in the light of the other issues, seem clearly to relate to matters not embraced within the general obligation imposed in the special issues upon intervener to install the machinery in time to water the crop.

It is our conclusion that there is error in the judgment of the trial court, in that the amount of defendant's recovery embraces damages resulting from delay in installation, for which under the terms of the contract intervener may not have become bound, and that this conclusion requires a reversal of the case.

The other questions presented have, in our opinion, been correctly determined by the Court of Civil Appeals.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the district court for a new trial.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission on the questions discussed.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes