## J. D. SCOTT, ET UX., V. NETTIE B. WALDEN.

No. 7924. Decided October 21, 1942.
Rehearing overruled November 25, 1942.
(165 S. W., 2d Series, 449.)

32

*Works & Brian,* of Amarillo, for plaintiffs in error.

*H. G. Cooper,* of Amarillo, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This suit, filed by J. D. Scott and wife, Prince E. Scott, against Miss Nettie B. Walden, is in the nature of an action to quiet title, having for its purpose the cancellation of a right of way easement granted by plaintiffs to the defendant in a deed. The question for decision is not whether an easement was created, but whether the plaintiffs are entitled to a cancellation of the easement on account of the ripening of a condition subsequent expressed in the grant. The language of the grant will be set out in full below. A jury was demanded, but at the conclusion of the evidence a verdict was instructed against the plaintiffs and judgment rendered upon the instructed

verdict that they take nothing. The trial court's judgment was affirmed by the Court of Civil Appeals. 154 S. W. (2d) 291.

The case is well stated in the opinion of the Court of Civil Appeals and our statement will, in the main, be in the language of that opinion, but because of slight changes therein quotation marks will not be employed.

The evidence discloses that prior to April 27, 1936, the plaintiffs owned the north 100 feet of Lot 1 in Block 200 of the Plemons Addition to the City of Amarillo. The plaintiffs resided in their home situated on the north 50 feet of the property which they still own and where they still reside. This property faces east on Pierce Street, which extends north and south. It is also adjacent on the north to Fourteenth Avenue, which extends east and west. The 50 feet immediately south and adjacent to the north 50 feet is known as the "Center" 50 feet of such Lot 1. Upon this center 50 feet the plaintiffs built an apartment house. In order to finance the construction of this apartment house the plaintiffs became indebted to a lumber company in the amount of $11,000 for the securing of which a deed of trust lien was given upon the apartment house and the center 50 feet upon which it stands. This indebtedness and the lien securing same were transferred to the defendant. Before constructing the apartment house the plaintiffs had built a concrete driveway on the south side of the north 50 feet extending from Pierce Street westward to their garage at the rear of the north 50 feet. Behind the apartment house they also constructed four connected frame garages upon the center 50 feet. These garages face eastward toward Pierce Street and are about 26 feet from the alley at the rear of the lot. There is no driveway upon the center 50 feet, and from the plat of the property introduced in evidence it appears that there is no room for one on either side of the apartment house. Since the construction of the apartment house the tenants therein have used the plaintiffs' driveway on the north 50 feet in reaching the four apartment house garages. In order to aid such tenants in reaching the four garages after leaving the rear of the concrete driveway the plaintiffs had a gravel driveway constructed leading from their driveway to the respective entrances of the apartment garages.

On April 27, 1936, in consideration of the cancellation of the $11,000 indebtedness held by the defendant, the plaintiffs

by deed conveyed to the defendant the center 50 feet upon which the apartment house stands.

The easement which is the subject of this controversy was granted in that deed of conveyance. We here copy in full that portion of the deed granting the easement, setting out in italics the particular language upon which the cause of action in this suit is based.

"And we do hereby sell and convey, and do by these presents grant, sell and convey unto said Nettie B. Walden, grantee herein, and her assigns, an easement in, to, upon and over all that portion of the concrete and cement driveway situated on the North 50 feet of said Lot No. one (1) adjacent to the land said premises herein conveyed constituting the way from Pierce Street into the garages and outhouses situated on the rear of the land herein conveyed, said easement being for the sole and only purpose of ingress and egress to and from said garages and outbuildings; it being distinctly agreed and understood, however, that the easement thus granted is not an exclusive easement but is subject to the equal right on the part of the grantors herein, their heirs, executors, administrators and assigns, of ingress and egress over and upon the same portion of said driveway to and from the garage and outbuildings situated on the rear of the North 50 feet of said Lot No. One (1), which right is hereby expressly reserved; the purpose and intention of the easement hereby granted being that henceforth the parties hereto, their respective heirs, executors, administrators and assigns shall have equal rights of ingress and egress over and upon all that portion of said driveway necessary and common to the way from Pierce Street into the garages and outbuildings situated upon said respective parcels of land and that neither shall have the right of ingress and egress to the exclusion of the other; *and it is agreed that the easement thus granted shall continue so long as the same may be necessary and required for ingress and egress to and from the garages and outbuildings situated on the rear portion of the 50 feet herein conveyed, after which it will cease and come to an end.* So long as the easement thus granted continues, moreover, the parties hereto bind and obligate themselves, their respective heirs, executors, administrators, and assigns, to share equally in the expense of making necessary repairs to the common portion of said driveway."

■ At the time of the above conveyance Pierce Street was paved in front of the property. The south side of Fourteenth Avenue was not paved. The alley at the rear of the property was not paved. The plaintiffs by special agreement were allowed to keep some chicken houses at the rear of the defendant's property behind the four garages and adjacent to the alley. Since the date of the above conveyance the south side of Fourteenth Avenue adjacent to the north 50 feet has been paved, the alley at the rear of the property has been paved and the chicken houses have been removed from defendant's premises. Plaintiffs base their suit on the ground that these changed conditions operated to forfeit or terminate the easement.

The language of the grant set out in italics above clearly manifest that the parties intended that the easement should not be perpetual, but that upon the happening of some future contingency same should terminate. That language is not sufficiently specific to enable the court to determine, as a matter of law, by a construction thereof what future contingency was in the minds of the parties. Neither is it so meaningless as that it should be disregarded altogether, thus resulting in the construction that an absolute grant of a perpetual easement was made. That construction, as pointed out above, would be contrary to the evident intention of the parties.

■ The word "necessary" does not have an exact meaning. As stated in Chicago I. & L. Ry. v. Baugh, 175 Ind. 419, 94 N. E. 571, 573:

"* * * The word 'necessary' has not a fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. * * *."

Whether or not, strictly speaking, the language of the grant is ambiguous need not be discussed, for even though it is not ambiguous on its face parol evidence was nevertheless properly admitted to apply the language to the subject with which it dealt for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v. Rush (Com. App.) 210 S. W. 521; Ryan v. Kent (Com. App.) 36 S. W. (2d) 1007; Guardian Trust Co. v. Bauereisen, 132 Texas 396, 121 S. W.

(2d) 579; Murphy v. Dilworth et al, 137 Texas 32, 151 S. W. (2d) 1004.

■ The only remaining question for decision is whether the evidence raised an issue of fact on the question of whether the contingency terminating the grant had happened. It is our considered opinion that such issue was raised by the testimony of Mrs. Scott, from which we quote as follows:

"Q. Was any discussion between you and anyone as to when or under what conditions the easement might or would become unnecessary and not be further required?

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. All right, just state if you had such discussion with anyone?

"A. Well, Judge Cooper came out and told me he was Miss Nettie's attorney, to talk over the situation, and mentioned about the easement over the drive and I objected to tying up any part of my home with the apartment, so I believe then we left the front room and walked down this drive to look over the situation and I told him that I certainly didn't want to tie it up, or tie my home up in any way like that, and how long it would be done, this easement, and he said as long as this was necessary for them to come in there, and I mentioned, why they couldn't come in from the alley as other apartment houses in town used that way—it was mentioned, of course, that I had my chicken house back there, and I told him 'Well, that could be moved.' It was just an old frame building.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. All right, and what else?

"A. And that the alley was muddy, and 14th Street at that time, that it would be, for them to come in at that time.

"Q. Was there any other conditions or changes in conditions that might occur discussed, except those two, the chicken house and the mud?

"A. That is all, the chicken house could be removed, because it was an old frame building, and of course we had some old fence back there to keep the chickens in, but of course, we could move that.

"Q. Has that little fence been removed?

"A. Yes. Here in July when I received notice from Judge Cooper.

"Q. How come that to be removed?

. . . . . . . . . . . . . .

"Q. Did you have any conversation with the defendant, Miss Walden, in regard to the removing of the chicken house?

"A. Yes, I called Miss Nettie when I received the letter from Judge Cooper for me to move my chicken house and things off of the premises in thirty days, and asked her why that she didn't come over and just talk to me about it. She said, well, she thought this was more of a business way to do it, and I said, would it make it any more convenient? And she said, well, she wanted the opening coming into the back of the garages, and make a playground of the plot that was between the garages and the apartment house, so that the children wouldn't have to play on her blue grass in front.

"Q. She wanted to come in the back?

"A. Yes, she was planning on coming in the back.

"Q. Well, was it in accordance with that request that you removed the chicken house?

"A. Yes."

While that testimony is not direct and positive to the effect that it was agreed that as soon as the paving was done and the structures were removed the easement should terminate, yet it is sufficient, in our opinion, to raise the issue that it was understood between the parties that the lack of pavement and the presence of the structures created the necessity for the grant. That being true, the construction of the pavement and the removal of the structures terminated that necessity, as the parties understood and used that term, and by the express language of the grant the easement was to terminate with the necessity therefor.

The judgment of the Court of Civil Appeals and the trial court will be reversed and the cause remanded.

Opinion adopted by the Supreme Court October 21, 1942.

Rehearing overruled November 25, 1942.