**CENTRAL SURETY AND INSURANCE CORPORATION, Appellant,**

**v.**

**The FIRST NATIONAL BANK OF FORT WORTH, Appellee.**

No. 16405.

Court of Civil Appeals of Texas.

Fort Worth.

March 15, 1963.

On Rehearing April 19, 1963.

Rehearing Denied May 10, 1963.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellant.

Richard Owens, Fort Worth, for appellee.

MASSEY, Chief Justice.

The appeal is from an order overruling the plea of privilege of Central Surety and Insurance Corporation, hereinafter termed Central Surety, to the cross-action of The First National Bank of Fort Worth, hereinafter termed bank.

There are no findings of fact and conclusions of law in the record. We believe the following to constitute fact. Individuals, whom we will refer to as A, B and C, were sisters. Certain realty stood in the name of A and B. C, in need of funds, prevailed upon B to join in the execution of a note and deed of trust to the realty. C signed the name of A to the note and deed of trust. C prevailed upon a notary public to complete the certificate on the deed of trust, under seal certifying that A, known to her to be the person whose name was subscribed to the deed of trust, personally appeared and acknowledged the fact of execution. On May 5, 1959, C presented the note and deed of trust to The First National Bank of Fort Worth, which loaned her the sum of $10,000.00. The deed of trust was accepted as security for the loan. In the early part of 1960, A was legally adjudged to be *non compos mentis*. B was appointed as A's guardian. Shortly thereafter B, as guardian for A and individually as applied to her own interest, sold the real estate. Of the proceeds from the sale $10,230.00 was delivered to the bank in repayment of the loan, plus interest. Fifty per cent of this sum, or $5,115.00, represented money which properly belonged to the estate of A.

Not long thereafter B ceased to be guardian for A. A new guardian was appointed. The new guardian filed suit against B and her bondsman, C, and the bank for $5,115.00.

By petition in cross-action the bank sued B as former guardian and individually, B's bondsman, C, and the notary public whose name was signed to the certificate of acknowledgment on the deed of trust. All these cross-defendants were residents of the county of suit. The bank also sued Central Surety as a joined cross-defendant. Central Surety was the surety on the statutory bond of the notary public. Premise of the bank's cause of action against Central Surety was that it was a necessary party to the suit against the notary in the establishment of its liability to the bank along with the liability of the principal on its bond, contingent upon the newly appointed guardian establishing his right to recover against the bank in the original suit.

Liability sought to be imposed by the original suit was alleged to have resulted by reason of the wrongful delivery of $5,115.00 of A's estate to the bank. In this transaction was involved the fraud of B for the benefit of C, with no act of the notary seemingly involved. The bank's theory of recovery on cross-action lay in the contention that it would not have loaned its money in the first instance but for the fraud of C, in which the participation of the notary figured, and which fraud seems to have been ratified by B. Further, that the bank would never have been placed in the position of a wrongful receiver of a part of A's estate but for the fraud of C and the notary, for it would not have loaned any money in the first instance and there would have been no loan to be repaid.

Central Surety filed its plea of privilege to be sued in Dallas County. The bank controverted the plea, adopting its pleadings made in cross-action, and set up its right to maintain venue as applied to Central Surety under Exceptions 4, 23 and 29a to V.A.T.S. 1995, "Venue, general rule".

On the hearing there was no direct evidence that A, who was adjudged a *non compos mentis* subsequent to the time the bank took the note and deed of trust, was of unsound mind at that time. The only direct evidence relative to the authority of C to act for A came from C, interested adversely to the bank but appearing as its witness. She testified that she had her sister's oral authority to act in the execution of the deed of trust. No loan officer for the bank testified. The reason and occasion for the deed of trust having been delivered to the bank as a part of the loan transaction was unexplained. There was direct evidence to the effect that the purported signature of A was placed on the deed of trust by C, that A never appeared before the notary public who executed the certificate of acknowledgment, and that the notary did not know A and had never seen her, but had signed the certificate and affixed her seal upon the assurance from C that everything was "all right".

■ We believe that the cause of action plead by the newly appointed guardian was severable and distinct from that asserted by the bank on the cross-action against its codefendant C, the notary, and Central Surety. Therefore, right to hold Central Surety is controlled by the venue provisions applicable to the bank's cross-action alone and must be treated as an independent suit. The averments of the newly appointed guardian in his petition, existence of which was the basis of the bank's cross-action, could not be treated as factual for the purposes of any test of Central Surety's plea of privilege, although the claim of both the plaintiff and the cross-plaintiff grew out of the same or closely related transactions. Sherrod v. Ruud Mfg. Co., 1942 (Tex.Civ.App., Amarillo), 158 S.W.2d 351; 1 McDonald, Texas Civil Practice, p. 425, "Venue", § 4.39, "Venue Effect of Cross-Claims and Third-Party Claims".

In our opinion the essence of any cause of action enuring to the bank in the circumstances and against any resident defendant would lie in the fraud of C and the notary. We do not believe that the circumstances of the separable transaction wherein the bank received funds properly belonging to the estate of A, *non compos mentis*, through an improper act by B, as guardian, created any right in the bank to a cause of action against either C or the notary. Requisite elements of the bank's case on its cross-action, therefore, would necessarily include the necessity to plead and prove that one or more of the resident defendants made or was connected with the making of false representation that the deed of trust constituted valid security for its loan of $10,000.00, was made to induce the bank to make the loan, that in reliance thereon the bank did make the loan, and that as result thereof it sustained (or was liable to sustain) a loss or injury.

■ Neither the pleading nor the proof affirmatively presented an issue as to whether the false representation was made to induce the bank to make the loan nor whether the loan would not have been made but for its reliance upon the false representation or its belief that the deed of trust constituted valid security. For these reasons we have concluded that the bank did not prove a prima facie cause of action against a resident defendant. The bank seeks to maintain venue against Central Surety as a nonresident cross-defendant under Exception 4, "Defendants in different counties" to V.A.T.S., Art. 1995, the venue statute. In order that this may be done it would be essential that a cause of action jointly alleged as against a resident and nonresident, or causes so intimately connected that both should be treated as joint and joined under the rule intended to avoid a multiplicity of suits, be proved as against a resident defendant. Stockyards Nat. Bank v. Maples,

1936, 127 Tex. 633, 95 S.W.2d 1300. Not having made such proof the bank may not hold Central Surety in the county of suit under the exception.

The bank contends that it is entitled to maintain venue against Central Surety under Exception 23, "Corporations and Associations", to the venue statute. The circumstances of the case were such that venue could be retained under the exception only in the event the bank made proof that there was an agent or representative of Central Surety in the county of the suit at the time the bank's cross-action was filed. Of this there was no proof. See Clark, Venue in Civil Actions, Ch. 23, p. 121, "Corporations and Associations", and the texts thereunder on proof necessary to sustain venue under the exception.

The bank further contends that it is entitled to maintain venue against Central Surety under Exception 29a, "Two or more defendants". The exception may be invoked only in cases where no defendant (cross-defendant in this case) resides in the county of the suit. Clark, Venue in Civil Actions, Ch. 29a, p. 176, "Two or More Defendants", § 2, "Construction of the Exception". Several cross-defendants reside in the county of the suit. The bank does not have the right to maintain venue as against Central Surety under the exception.

Judgment of the trial court is reversed. It is ordered that the bank's cause of action as against Central Surety be transferred to an appropriate district court of Dallas County, Texas, the county of its residence for purposes of this suit.

## ON MOTION FOR REHEARING

The judgment of the trial court having been one overruling the insurance company's plea of privilege, when, if we are correct, it should have been a judgment which sustained the plea of privilege, it necessarily follows under the decision of Jackson v. Hall, 1948, 147 Tex. 245, 214 S.W.2d 458, that the case should be treated by us as having not been fully developed and tried under a wrong theory by the court below as well as by the bank's attorney, for "otherwise the trial court would have transferred the cause".

The Jackson v. Hall case was one in which the plaintiffs who filed a controverting affidavit, predicated the same upon that portion of Subdivision 23 of V.A.T.S. 1995 that the bank predicated (in part) its controverting affidavit in the instant case, and where on the trial the said plaintiffs wholly failed to show either that they resided in the county of the suit or that a cause of action or part thereof arose in said county. We feel that we are controlled by the decision in that case despite our concern with the theory of liability advanced by the bank's pleadings.

Accordingly we have concluded that it would be proper to remand the cause to the trial court for another hearing rather than to order the same transferred.

It is accordingly so decreed. In so far as our original opinion renders our judgment it is withdrawn and our order of remand substituted therefor.

## ON SECOND MOTION FOR RE-HEARING

On the former rehearing we directed a remand of the case for further development, if within the power of the bank. Central Surety has in turn filed its motion for rehearing in which it levels a strenuous attack upon our interpretation of Jackson v. Hall, 1948, 147 Tex. 245, 214 S.W.2d 458, and insists that our original judgment of reversal and rendition in its favor should be reinstated.

It is to be noted that the Supreme Court's action in Jackson v. Hall was taken pursuant to its having granted leave to file a petition for mandamus against the Justices of the Court of Civil Appeals to compel a judgment of remand upon reversal of a trial court's judgment overruling a plea of privilege, rather than the rendition by which the case was ordered transferred.

Our interpretation of the holding in Jackson v. Hall is that as applied to appeals in general, and those from orders overruling pleas of privilege in particular, any proper judgment of an appellate court which reverses the judgment of the trial court should be one which incorporates therein an order remanding the cause to the trial court, rather than one of rendition, when the reversal is occasioned by a lack of evidence in support of the judgment of the trial court,—*unless* it clearly appears that the case was fully developed, i. e., *unless* it clearly appears that there was no evidence available to be introduced in the trial court which would have supplied such "lack".

Motion for rehearing is overruled. No additional motion for rehearing will be entertained.