Sheppard W. KING, III, Appellant,

v.

CITY OF DALLAS, Appellee.

No. 16301.

Court of Civil Appeals of Texas.

Dallas.

Jan. 3, 1964.

Rehearing Denied Jan. 31, 1964.

Brady, Drake & Wilson, Dallas, for appellant.

H. P. Kucera, City Atty., and N. Alex Bickley and Kenneth C. Dippel, Asst. City Attys., Dallas, for appellee.

BATEMAN, Justice.

In this trespass to try title action appellant sought to recover certain land conveyed by his parents to appellee on an express condition subsequent which he says was breached. He also sued for damages. At the conclusion of a non-jury trial the court rendered judgment denying appellant any relief. We have concluded that the judgment must be affirmed.

The deed in question is dated April 13, 1914, and recites that it is given "for and in consideration of the City of Dallas using the land hereafter described for public park purposes," and that it is made upon and subject to the condition that the property shall be used by the City of Dallas exclusively for public park purposes, and that said condition shall run with said property, and that "should the same, at any time be violated, the title to said lot shall ipso facto, revert to and revest in us, the grantors, or our heirs or assigns, as the case may be." Appellant succeeded to the interest of the grantors.

By his first point of error on appeal the appellant says the court below erred in failing to hold that the language of the deed in question created a condition subsequent which was violated, and that such violation caused the title to revert to him.

Findings of fact and conclusions of law, filed in response to appellant's request, were to the effect that after the subject property was conveyed to the City it was included in the park system as a part of the Turtle Creek Parkway, which was developed as a system of larger parks, having recreational and auditorium facilities, connected by a smaller elongated park along Turtle Creek, consisting of "joinder strips," such as subject property, mainly for beauty and preservation of natural terrain for the traveling public and neighboring property. Due to the topographical conditions and the size and location of the property, except as a part of this park system, the subject property would not justify development as a park or for park purposes, its use as a park being dependent upon the other properties developed in connection therewith; and were it not for the widening of Cedar Springs Road and Turtle Creek Boulevard the subject property could not have been developed to its highest use for park pur-

poses without creating a traffic hazard; and since such widening of the streets and bridge the subject property is more useful and beneficial for park purposes than it was before.

The court also found that at the date of the deed appellant's parents owned the property across the street, upon which they built their home in 1925, and that prior to 1942 they had sold all of their interest in the properties in the area. The court further found that the Kessler Plan of 1911 showed the system of parks and parkways in the city and recommended the widening of Turtle Creek Boulevard and Cedar Springs Road in conjunction with the development of Turtle Creek Parkway as a park; that this plan was carried forward and adopted by the "Ulrichson Report" in the year 1927; that S. W. King, Jr., one of the grantors in the deed in question, served on the Chamber of Commerce committee that approved the Ulrichson Report and that he knew or should have known that the subject property would be used, and was being used prior to his death in 1946, as a part of the Turtle Creek Parkway and that the master plan of the City of Dallas for this area, as carried forward in subsequent reports, anticipated and provided for the widening of Turtle Creek Boulevard and Cedar Springs Road in this area; that at the time of the conveyance in 1914 the general park plan for the City, including the Turtle Creek Parkway, was in existence and purchases had been made and were being made by the City in conformity therewith; that the City has used and maintained subject property for public park purposes continuously from the time of its acquisition.

The court further found that prior to 1932 the City had incorporated into the paved portion of the street 70 square feet of subject property, since which time the City has held peaceful, continuous and adverse possession of the property, exempt from taxes, under a deed duly registered; that though appellant and his predecessors in title knew or should have known of the use of the 70 square feet, they made no attempt to exercise the right of re-entry on account thereof; and that for more than ten years prior to the filing of this suit a portion of subject property had been used for utilities and utility lines, as well as for a well defined pathway, but that no right of re-entry had been asserted by appellant or his predecessors in title on account thereof; that the subject property sloped very steeply from Gillespie Avenue down to the center of Turtle Creek, with a drop of over ten feet down to the edge of the water, only a small portion being at ground or street level; that Turtle Creek itself is a part of the storm sewer system of the City of Dallas, and a portion of subject property, together with Turtle Creek itself, constitutes the catch basin for the pressure sewer constructed to alleviate flooding, and that a portion of subject property floods periodically as a result of drainage and local rains.

The court also found that, commencing on or about May 1, 1960, the City utilized approximately 5,870 of the 17,400 square feet of subject property for the bridge, roadway area and sidewalks in and around the property, together with the retaining wall in connection with the bridge; that the traffic at the intersection of Gillespie Avenue and Cedar Springs Road was such as to constitute a hazard to those who would stop or park or slow down to view the premises, but that the widening of Cedar Springs Road and the bridge, and the utilization of a portion of the subject property for the same, have resulted in an increased use of the property for park and parkway purposes, made it available to a greater number of people and allowed the utilization of additional areas in the center part of the boulevard area for park purposes and for beautification, so that the total parkway project has been enhanced insofar as its utilization by the public is concerned; and that the property is more valuable for park purposes and usable by a larger number of citizens than before the widening.

A careful examination of the entire record demonstrates that the foregoing fact findings are amply supported by the evidence. Hence, they are binding on us and we are not authorized to substitute our findings therefor even if we were disposed to do so. Bavousett v. Bradshaw, Tex.Civ.App., 332 S.W.2d 155, err. ref. n. r. e.; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 621, 23 A.L.R.2d 1114.

It seems clear to us from the record before us that the covering up of a portion of the subject property by the widening of the paved streets and bridge adjacent to it, and the necessary retaining wall and sidewalks, did not constitute a diversion or departure from the use of the property to which it was dedicated by the deed of gift. Incidentally, it will be noted that the deed required the property to be used "for public park purposes," not "as a park." It seems to us that the phrase used would permit almost any use of the property that would reasonably and probably contribute materially to the enjoyment of the remainder of the donated area or adjacent park properties by members of the public. Could it be contended that the gift of a tract of land on condition that it be used exclusively for park purposes would be defeated merely because the City constructed footpaths through the property in order that the public might walk through it and enjoy the beauty thereof? Would there be any difference in principle if those footpaths were later graveled, or even paved? Would the clearing of bridle paths through the donated park area be considered as withdrawing the area covered by the paths from "park purposes"? Assuming that negative answers to these questions are inevitable, then we opine that it would be proper for the City to construct graveled or paved roadways through the park area in order to permit motorists to enjoy the same; and if that opinion is well grounded, then it is but a short step further to say that the widening of a paved roadway or bridge along the edge of the area in question, whereby the enjoyment of the remaining area as a park or parkway would be enhanced, would actually be a use for park purposes.

"Park purposes are not confined to a tract of land with trees, grass, and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoological gardens, and many other purposes, for the public benefit, are recognzed as legitimate purposes." Furlong v. South Park Com'rs, 320 Ill. 507, 151 N.E. 510, 511.

The Supreme Court of Florida used this language in Ocean Beach Realty Co. v. City of Miami Beach, 106 Fla. 392, 143 So. 301, 302:

"It is not contended that any of the property has been abandoned for park purposes, except that strip along the edge farthest from the Ocean which was used in the widening of the street, and the record further shows that the widening of the street was necessary and essential to make the park available for the pleasure and recreation of the great number of people who visit it.

"It has been held that the laying out of walks and even streets around or through a park is not at all inconsistent with the dedication for park purposes where the same are necessary or contribute to the full enjoyment of the property for park purposes."

We are also impressed with the conclusion reached and the language used in the California case of Griffith v. City of Los Angeles, 175 Cal.App.2d 331, 346 P.2d 49, 56. There a tract of 3,800 acres was donated to the City on condition that it be used exclusively "as a public park and pleasure ground, for the amusement, recreation, health and pleasure of its inhabitants." In the area was a canyon which the City filled and leveled to produce 40 acres of level

land for recreational use, and the donors' son and heir sued to enforce the reverter clause in the deed. In overruling his contention the court said, in part:

"However, a dedication must be understood and construed with reference to its primary object and purpose. Nothing is improper which conduces to that object. The real question is whether the use in a particular case, and for a designated purpose, is consistent or inconsistent with such primary object. Such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. The dedicator is presumed to have intended the property to be used by the public in such way as will be most convenient and comfortable, and according to not only the proprieties and uses known at the time of the dedication, but also to those justified by lapse of time and change of conditions. Wattson v. Eldridge, 207 Cal. 314, 320, 278 P. 236. It cannot reasonably be supposed that the dedicators intended otherwise than that Griffith Park should respond to whatever demands new improvements and increased facilities might make on it, so long as such demands always be consistent with the conditions stated in the grant."

That is substantially what the trial court held, and we agree with this holding.

Appellant relies upon City of Dallas v. Etheridge, 152 Tex. 9, 253 S.W.2d 640, and Lawyers Trust Co. v. City of Houston, Tex., 359 S.W.2d 887, but we do not regard either of these cases as controlling here. In the Etheridge case the grant was to the City of Dallas on condition that the land be used for park purposes only, and it was shown that the City had cut a public road through the property which it kept graveled and otherwise suited to public use. As stated in the opinion of the Supreme Court, "There is no evidence in the record that this road was built to further the public's use and enjoyment of the property as a park. On the contrary the evidence in the record shows conclusively that such was not the purpose of the road. The use of a part of the property as a public road under the facts shown was inconsistent with the purpose to which the City was required to devote the property and was a breach of the condition of the easement." In the case before us, however, it was shown, and the court found, that the widening of the streets and bridge and the construction of the retaining wall and sidewalks resulted in an increased use of the property for park and parkway purposes, making it available to a greater number of people, and allowed the utilization of additional areas in the center part of the boulevard area for park purposes and for beautification.

In Lawyers Trust Co. v. City of Houston, supra, it appeared that certain property was conveyed to the City on condition that it be used for parks, civic centers, schools or community places. The jury held that the land had ceased to be used for park purposes and had been abandoned as a public park. Those jury findings clearly authorized the holding that the condition had been breached, and also clearly distinguish that case from this.

Appellant's first point is accordingly overruled.

His second and third points assert that the court erred in admitting in evidence certain facts and circumstances in existence before and after the execution of the deed in question, including various city plans, newspaper clippings, magazine articles, committee reports, drawings, plats, maps and excerpts from books, all of which are said to be hearsay and to have the effect of varying the express terms of the deed in question. It is argued thereunder that the deed is unambiguous and should be so construed as to give effect to the parties' intention, as gathered from the four corners of the instrument, which alone should be considered. City of Corpus Christi v. Mc-

Carver, Tex.Civ.App., 275 S.W.2d 194, reversed on other grounds McCarver v. City of Corpus Christi, 155 Tex. 153, 284 S.W.2d 142; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166. We recognize this principle of law and also agree that the deed involved here is unambiguous. However, we do not understand that the testimony and other evidence complained of were offered for the purpose, or had the effect, of varying, enlarging or contradicting the terms of the deed. Rather, they were obviously offered for the purpose of demonstrating that the City's acts actually carried out and made effective the real intentions of the donors. To do so it was reasonably necessary and proper for the City to show the surrounding circumstances.

■ Our courts have held numerous times that even in the case of an unambiguous deed it is not improper for the court to admit evidence of the existing facts and circumstances for the purpose of ascertaining the real intention of the parties. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449, 154 A.L.R. 1; Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639. The following language used by Chief Justice Alexander in Murphy v. Dilworth, supra, is applicable here:

"In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application. First National Bank v. Rush, Tex.Com.App., 210 S.W. 521; Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A.,N.S., 383; 22 C.J. 1192. This does not mean, however, that the parties may prove the making of an agreement different from that expressed in the written contract, nor that the unambiguous language used in the contract may be violated or the le-

gal effect thereof changed. It merely permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed. Reynolds v. McMan Oil & Gas Co., Tex. Com.App., 11 S.W.2d 778; Southern Gas & Gasoline Engine Co. v. Richolson, Tex.Com.App., 216 S.W. 158."

As said by Judge Hickman, then a member of the Commission of Appeals, in Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, 583:

"It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v. Rush, Tex.Com. App., 210 S.W. 521; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007."

■ Appellant complains that many of the documents offered by appellee were admitted in violation of the hearsay rule. None of them even purported to prove any controverted fact, but only to show circumstances surrounding the formation and maintenance of that part of the park system which included the subject property. If any of such documents contained statements that could be said to be hearsay, the error in admitting them was harmless in that the exclusion or admission thereof could not have changed the result. A careful study of the entire record before us indicates that a correct and proper result was reached and that nothing occurred in the trial which amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. Points two and three are overruled.

Affirmed.