**Arthur AVNSOE, Appellant,**

v.

**SQUARE 67 DEVELOPMENT CORP.,
Appellee.**

**No. 4775.**

Court of Civil Appeals of Texas,
Eastland.

April 11, 1975.

Rehearing Denied May 2, 1975.

James C. Tubb and Travis Vanderpool, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellant.

Bill W. Bailey, DeSoto, for appellee.

WALTER, Justice.

Arthur Avnsoe filed suit against Square 67 Development Corporation, agent for Square 67, a joint venture, for damages involving a lease of a building in the defendant's shopping center. Plaintiff asserted that the defendant failed to "substantially complete" the building on the date specified in their lease and the letter agreement extending the completion date to October 16, 1972, and because of this failure, the plaintiff contends he was authorized to cancel the lease. The defendant contended the building was substantially completed under the terms of the lease and the extension agreement and that plaintiff had no right to cancel. The defendant filed a cross-action against the plaintiff individually and d/b/a Gentlee Investment Company for damages and rent.

In a nonjury trial the court rendered judgment that the plaintiff take nothing and the defendant recover $16,666.80 for

rent on its cross-action. The plaintiff has appealed.

Paragraph ten of the lease agreement provides, in part, as follows:

"Landlord agrees to designate two (2) parking spaces in front of the leased premises for limited parking of '5 minutes only' and painted in a color different from the spaces in the other parking area."

Appellant cites Sun Oil Company v. Whitaker, 412 S.W.2d 680 (Tex.Civ.App.—Amarillo 1967, affirmed by the Supreme Court in 424 S.W.2d 216), for the proposition that the court was entitled to consider the preliminary negotiations relating to the subject matter of the contract and the surrounding facts and circumstances in order to determine the intention of the parties relating to the parking facilities. Appellee agrees with this statement of the law and says that both parties presented evidence relating to the preliminary negotiations of the contract and that this testimony was not objected to by either party.

Appellant is contending the portion of paragraph ten of the lease quoted above should have been construed by the court to mean that appellee agreed to furnish parking facilities in the triangular shaped area immediately in front of the building space in question and that this particular parking area was not substantially completed on or before October 15, 1972.

The judgment finds: (1) "that any oral agreements between the parties concerning parking would be deemed to have been merged into the written agreement pursuant to the doctrine of merger; (2) that the Written Agreement did not require the Defendant to furnish parking in the triangular shaped space immediately in front of the building space which the Plaintiff was to occupy; (3) the Defendant had substantially completed the parking area required to be furnished to the Plaintiff under the terms of the agreement between the parties; and (4) the term 'substantial comple-

tion' as used in the agreement between the parties meant that there had been no wilful departure from the terms of the agreement and no omission in essential points and that the agreement had been honestly and faithfully performed in its material and substantial particulars and the only variance from the strict and literal performance consisted of technical or unimportant omissions or details."

Appellee contends the parking area and the interior of the building in question were substantially completed on October 15, 1972. George Chapman, Superintendent of Construction, testified substantially as follows:

Defendant's Exhibit #2 shows to have been made on October 1st and shows the raw leased space in its beginning stages; there is an exposed area there in the center left of this picture which appears to be dirt, and this is where the green area at one time was planned to be. There was supposed to be a planter in that area. At the time the rest of the parking lot was paved, the reason this particular triangular shaped area could not be paved was because they were still talking about whether they were going to take the planter out; if they took the planter out it was going to create a water problem right in front of the martinizing building; that water wouldn't drain properly; that this required us to add a storm drain so that the water would drain properly in front of the martinizing building; that this drain was subsequently installed; I would estimate that it would take 6 to 7 tons of asphalt to cover this triangular shaped area and an asphalt truck normally carries 20 to 22 tons of asphalt; that it would take about an hour and a half to two hours to roll the asphalt in this area. The reason this asphalt was not rolled in there before October 1st was because Uvalde Construction had the paving contract and we had some additional work behind the Woolco store that we had installed so that they could open on time; that we

didn't have the best conditions; there was some wet ground back there; we were waiting to catch all of this at once. The air conditioning on October 16, 1972, was not installed in this building; I would say that it was about two to two and a half weeks after this or somewhere around the 1st of November before the air conditioning was installed; there was some glass work to be done on the inside of the building also; that my company advised me that the triangular shaped area was to be converted from a green spot or flower bed to a parking area about one or two weeks prior to October 1, 1972; that another reason the paving was not completed until some time after November 10, 1972, was on account of bad weather and we had been informed that the appellant had elected to cancel the lease.

A paragraph in the lease provided that by accepting possession of the premises the tenant would be deemed to have agreed that landlord had completed the construction.

By certified letter to the appellee on October 17, 1972, the appellant gave notice that he was exercising his option to cancel the agreement pursuant to the terms of the contract.

The court found that the written agreement did not require the defendant to furnish parking in the triangular shaped area immediately in front of the building in question. It is apparent that by making such finding, the court failed to consider any of the parol evidence relating to the parking area. The written agreement and the admissible parol evidence conclusively establishes that both parties intended for the triangular shaped area in front of the proposed building to be the parking area provided for in the contract. The uncontradicted evidence reveals that appellant's prime reason in accepting this building site was appellee's agreement to provide special parking. Another finding of the court supports the appellant's contention that the court failed to consider any of the admissible parol evidence by its finding that any oral agreements between the parties concerning parking would be deemed to have been merged into the written agreement pursuant to the Doctrine of Merger.

In Kritser v. First National Bank of Amarillo, 463 S.W.2d 751 (Tex.Civ.App.— Beaumont 1971, writ ref'd. n.r.e.), the court said:

"This testimony was received properly, not for the purpose of varying the terms or words used, but for the purpose of ascertaining the intention of grantor. The authorities are collated in an opinion by Justice Bateman in King v. City of Dallas, 374 S.W.2d 707, 712 (Tex.Civ. App.—Dallas, 1964, error ref. n.r.e.), from which we take this lengthy but pertinent quotation:

'Our courts have held numerous times that even in the case of an unambiguous deed it is not improper for the court to admit evidence of the existing facts and circumstances for the purpose of ascertaining the real intention of the parties. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449, 154 A.L.R. 1; Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com. App., 212 S.W. 639. The following language used by Chief Justice Alexander in Murphy v. Dilworth, supra, is applicable here:

' "In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application. First National Bank v. Rush, Tex.Com.App., 210 S.W. 521; Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A., N. S., 383, 22 C.J. 1192. This does not mean, however, that the parties may prove the making of an agreement different from that expressed in the writ-

ten contract, nor that the unambiguous language used in the contract may be violated or the legal effect thereof changed. It merely permits proof of the then existing circumstances, in order to enable the court to apply the language used therein to the facts as they then existed. Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778; Southern Gas & Gasoline Engine Co. v. Richolson, Tex.Com.App., 216 S.W. 158."

'As said by Judge Hickman, then a member of the Commission of Appeals, in Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, 583:

' "It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v. Rush, Tex.Com.App., 210 S.W. 521; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007." '

2 McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 1681, p. 516, states the rule in this manner:

'Evidence offered strictly for the purpose of aiding in the construction of a written instrument is not within the prohibition of the Parol Evidence Rule.' "

The lease provided that the building would be substantially completed on or before October 1, 1972. At the request of appellee, appellant agreed to an extension and the lease was amended by a letter dated September 25, 1972. It provided for the leased premises to be substantially completed on or before October 16, 1972. In Cotherman v. Oriental Oil Co., 272 S.W. 616 (Tex.Civ.App.—Amarillo 1925, no writ), the court said:

" 'A deliberate and material departure from the terms of the contract prevents substantial performance, even though the work done may be as good or as valuable to the promisee as the work agreed to be done.' Page on Contracts, vol. 5, par. 2781, and authorities cited.

The record discloses a deliberate departure from a material stipulation in the contract.

'If the contract provides in detail as to the method of performance, the court cannot apply the doctrine of substantial performance so as to ignore such express provisions.' Page on Contracts, vol. 5, par. 2783."

The undisputed evidence reveals that on October 15, 1972, the parking area and the building required to be furnished under the terms of the lease and the letter amendment were not completed. The uncontradicted evidence reveals the triangular shaped area in front of the proposed building space was the area contemplated by the parties as the parking area as shown by appellant's exhibits and appellee's exhibits. This area was a part of the leased premises. It cannot be said that a complete failure to comply with its contract by substantially completing the leased premises on or before October 15, 1972, consisted of "technical or unimportant omissions or details." The excuses offered by appellee for its failure and other facts and circumstances in evidence show as a matter of law that appellee did not substantially complete the parking area according to the contract.

The case has not been fully developed on the question of the apppellant's damages. In Members Mutual Insurance Company v. Tapp, 437 S.W.2d 439 (Tex.Civ.App.—Houston (14th Dist.) 1969), the court said:

"This Court is not impelled, however, to render judgment transferring this cause. It does not appear that the essential considerations have been made available to the trial court for a proper dispo-

sition of the venue issue. '* * * (W)here a case has not been fully developed, and where it has been tried on the wrong theory, the judgment of the appellate court should be one of remand and not one of rendition.' Jackson v. Hall, 147 Tex. 245, 214 S.W.2d 458; Central Surety & Ins. Corp. v. First Nat'l Bank of Fort Worth, Tex.Civ.App., 367 S.W.2d 377, no writ hist. We are of the opinion that the ends of justice will be better served by remanding this case for a new trial on the issue of venue."

The court found that appellee had substantially completed the leased premises on October 15, 1972. We have considered the entire record and find the evidence is factually insufficient to support such finding. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

We hold the case has not been fully developed and in the interest of justice the judgment is reversed and the cause is remanded.