Opinion filed August 6, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 6,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00284-CV 

                                                    __________

 

          BANDERA DRILLING CO., INC. AND RAYBURN L. BRAZZEL, 

                                                      Appellants

 

                                                             V.

 

                                SLEDGE
DRILLING CORP., Appellee

 



 

                                         On
Appeal from the 385th District Court

                                                        Midland
County, Texas

                                                 Trial
Court Cause No. CV46357

 



 

                                                                   O
P I N I O N

 

 This
is a dispute over the enforceability of a covenant not to compete.  The trial
court reformed the covenant by reducing the covered territory, found that the
reformed covenant was enforceable, and granted injunctive relief.  We reverse
and remand.

                                                             I. 
Background Facts








 In
2005, David W. Sledge and Spencer Armour were working for a large drilling
company but were interested in operating their own company.  Sledge ran into
Rayburn L. Brazzel at a convenience store.  Brazzel owned a drilling company,
Bandera Drilling Co., Inc.  Their encounter led to a conversation about Sledge
and Armour acquiring Bandera Drilling=s
rigs.  The parties signed a letter of intent on October 21, 2005.  They
ultimately met on a Saturday morning in February 2006 at Brazzel=s office in Abilene  and
worked out the terms of an agreement themselves.

The
parties labeled their agreement ABANDERA
DRILLING COMPANY, INC. SIX DRILLING RIGS AND THREE PIECES OF EQUIPMENT PURCHASE
AGREEMENT.@  The
agreement defined Bandera Drilling Company, Inc. d/b/a Bandera Supply Company
as the seller. Bandera Supply was originally incorporated as a separate entity;
however, because of tax law changes, Brazzel began operating it as a dba of
Bandera Drilling instead, although he continued to maintain separate books for
the two companies.

The
agreement conveyed six drilling rigs, a mud pump, a rotary table, and a swivel
to Sledge Drilling for $34,000,000:  $33,950,000 was payable to Bandera
Drilling, and the remaining $50,000 to Brazzel.  As part of the agreement,
Bandera Drilling and Brazzel agreed not to compete with Sledge Drilling by
engaging in the oil or gas well contract drilling business AWest of the North/South
line drawn through the Colorado City, Texas courthouse@ for five years.

Brazzel
signed the agreement individually and on behalf of Bandera Drilling.  Brazzel
and his wife executed written consents to the agreement as both shareholders
and directors of Bandera Drilling.  Brazzel also signed an assignment and bill
of sale on behalf of Bandera Drilling in which he conveyed Aall of the rights, title
and interest, tangible and intangible@
that Bandera Drilling had in the six rigs and three pieces of equipment.

The
agreement=s structure
provided tax benefits for both parties.  Sledge Drilling was responsible for
any sales taxes.  A Sledge Drilling representative met with the Texas
Comptroller=s office
and acquired a Texas Direct Payment Sales Tax Permit based upon the fact that
it was acquiring an identifiable segment of Brazzel=s business.  Because of this, no sales tax was
owed on the transaction.  Bandera Drilling received potential federal income
tax benefits.  Brazzel=s
goal was to do a like-kind exchange to avoid recapturing depreciation by having
Bandera Supply sell the old rigs, buy new rigs, and then trade them to Bandera
Drilling.








Bandera
Drilling=s employees
were introduced to Sledge and Armour as the new owners.  The rig hands went to
work for Sledge Drilling, and Bandera Drilling transferred at least a portion
of their employment files so that they could obtain health insurance.  Bandera
Drilling retained approximately forty employees.  Some of these were working
for Bandera=s trucking
company, some for the supply company, and the rest for Bandera Drilling. 
Bandera Drilling=s
salesman, David Gober, introduced Sledge and Armour to Bandera Drilling=s customers.

Brazzel
sold his rigs so that he could purchase updated rigs.  He had been working with
National Supply to purchase an electric rig.  His intent was to drill wells in
Palo Pinto County and Stephens County and to work the Barnett Shale near Fort
Worth.  The price of the electric rig eventually became too expensive, and he
decided to build new rigs instead.  He completed his first rig and had it in
service in Palo Pinto County or Stephens County in July 2006.  In late 2006,
Basic Energy contacted Armour.  Basic wanted to purchase some drilling rigs. 
This discussion led to an agreement whereby Basic acquired Sledge Drilling on
April 2, 2007.

Brazzel
contacted Sledge after the Basic acquisition and unsuccessfully attempted to
sell him another rig.  Brazzel made other efforts to sell the rig, but he had
only one offer B for
approximately one-half of what he was seeking, and he elected to put it in
service instead in the protected area.  Brazzel notified Sledge in December
2007 that he had decided to test the noncompete provision by going back to work
in West Texas.  Brazzel justified this by contending that Sledge and Armour had
orally promised to run their company as a small independent and that their sale
to Basic violated this promise.  Despite his professed concern for small
operators, Brazzel then drilled ten wells for XTO Energy B an NYSE-listed company. 
Brazzel also claimed that Sledge Drilling promised to drill three wells a year
for Mr. Voskamp, Armour=s
neighbor and the operator of some wells in which Brazzel was an investor, but
that it did not do so.  In 2006, Voskamp approached Armour about drilling a
well.  Sledge Drilling=s
rigs were committed to long-term contracts, but they had a window for one rig. 
That window did not fit Voskamp=s
schedule.








Sledge
Drilling filed suit to enforce the covenant not to compete.  The parties filed
competing motions for summary judgment.  The trial court reformed the covenant
by limiting it to Texas and New Mexico and granted partial summary judgment in
favor of Sledge Drilling.  Subsequently, the parties reached a partial
settlement agreement.  Without conceding the covenant=s enforceability, they agreed that Sledge
Drilling was entitled to an injunction through March 10, 2011, if it was
enforceable.  Both parties nonsuited with prejudice all requests for relief except
for Bandera Drilling and Brazzel=s
request for a declaratory judgment on the covenant=s validity.  The trial court entered a final
judgment consistent with this agreement and its prior partial summary judgment.

                                                                       II. 
Issues

Bandera
Drilling and Brazzel challenge the judgment with two issues.  They argue first
that the trial court erred by finding the covenant enforceable and second that
the trial court erred by not striking inadmissible affidavit testimony.

                                                        III. 
Analysis

A. 
Standard of Review.

We
review a summary judgment de novo.  Provident Life & Accident Ins. Co.
v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We review the evidence
presented in the motion and response in the light most favorable to the party
against whom the summary judgment was rendered, crediting evidence favorable to
that party if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not.  City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005).  When both sides move for summary judgment and the trial court
grants one motion and denies the other, we review the summary judgment evidence
presented by both sides and determine all questions presented.  Comm=rs Court of Titus County v.
Agan, 940 S.W.2d 77, 81 (Tex. 1997).  In this instance, we render the
judgment the trial court should have rendered.  Id.  

 When,
as here, we are required to interpret a written agreement, our primary concern
is to ascertain the true intentions of the parties as expressed in the
instrument.  R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596
S.W.2d 517, 518 (Tex. 1980).  We examine and consider the entire writing in an
effort to harmonize and give effect to all the provisions of the contract so
that none will be rendered meaningless.  Universal C.I.T. Credit Corp. v.
Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone
will be given controlling effect. All the provisions must be considered with
reference to the whole instrument.  Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962).  The contracts are construed from a
utilitarian standpoint, bearing in mind the particular business activity sought
to be served.  Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex.
1987).

B.
Is the Covenant Not to Compete Enforceable?

Texas
common law has traditionally been hostile to restraints of trade such as
covenants not to compete, but the Covenant Not to Compete Act provides:








[A] covenant not to
compete is enforceable if it is ancillary to or part of an otherwise
enforceable agreement at the time the agreement is made to the extent that it
contains limitations as to time, geographical area, and scope of activity to be
restrained that are reasonable and do not impose a greater restraint than is
necessary to protect the goodwill or other business interest of the promisee.

 

Tex. Bus. & Com. Code Ann. ' 15.50(a) (Vernon 2002). 
Brazzel argues that his covenant does not satisfy this test and is, therefore,
unenforceable because the purchase agreement lacks Aany interest worthy of protection.@  Sledge Drilling responds
that the covenant is enforceable because the agreement transferred protectable
intangible rights B as
reflected by the employee and customer introductions and the transfer of
employee files.

 Both
parties have extensively described the negotiations leading up to the contract,
including prior versions of the agreement and the oral promises each allegedly
made the other.  We cannot consider this extrinsic evidence.  Neither party
contends that the agreement is ambiguous or is not fully integrated, and the
contract contains a merger clause.[1]  When a
contract contains a merger or integration clause, the contract=s execution presumes that
all prior negotiations and agreements relating to the transaction have been
merged into the contract, and it will be enforced as written and cannot be
added to, varied, or contradicted by parol evidence.  ISG State Operations,
Inc. v. Nat=l
Heritage Ins. Co., 234 S.W.3d 711, 719 (Tex. App.CEastland 2007, pet. denied).  During oral
argument, Brazzel correctly pointed out that courts can properly consider parol
evidence of the surrounding circumstances when interpreting a contract.  See
Avnsoe v. Square 67 Dev. Corp., 521 S.W.2d 874, 876 (Tex. Civ. App.CEastland 1975, no writ). 
Courts have, for example, considered the circumstances leading to the execution
of an agreement.  See, e.g., Columbia Gas Transmission Corp. v. New Ulm Gas,
Ltd., 940 S.W.2d 587 (Tex. 1996) (interpreting contract=s pricing provision in
light of the parties=
knowledge of impending deregulation and their uncertainty about the impact this
would have on gas prices).  But when the parties utilize a merger provision,
the substance of any pre-execution negotiations, including the text of any
prior drafts, is not a permissible consideration absent pleading and proof of
an ambiguity, fraud, or accident.  ISG State Operations, 234 S.W.3d at
719-20.  Because that situation is not present, we cannot consider the parties= negotiations B including any prior drafts
or oral promises.








Courts
must consider two questions when determining the enforceability of a covenant
not to compete:  (1) is there an otherwise enforceable agreement and (2) was
the covenant not to compete ancillary to or part of that agreement at the time
the otherwise enforceable agreement was made.  Light v. Centel Cellular Co.
of Tex., 883 S.W.2d 642, 644 (Tex. 1994).  The first question is easily
resolved because the purchase agreement is an otherwise enforceable agreement. 
The second question, however, is more difficult because of the divergence
between the parties=
actions and the express terms of their agreement.  Specifically, the agreement
contains no reference to business goodwill; however, goodwill was
unquestionably transferred.

Brazzel
characterizes the purchase agreement as Athe
naked purchase of rigs and equipment.@ 
The agreement does convey title to six rigs and three pieces of equipment, but
Brazzel=s
characterization fails to explain the presence of the noncompete provision or
the $50,000 payment to Brazzel individually and, more significantly, Bandera
Drilling=s
post-execution actions.  Bandera Drilling introduced Sledge and Armour to its
employees as the new owners and gave Sledge Drilling at least some information
from their personnel files.  The parties have offered conflicting descriptions
and explanations of what was done and why.  Sledge Drilling contends that the
employees were an essential component of the transaction because the rigs could
not have been manned without them and that Brazzel transferred all of their
employee files.  Brazzel asserts that he only transferred the information that
was necessary for the employees to obtain insurance and that he was trying to
help them secure employment with Sledge Drilling because it would take time to
get his new rigs working.  Because we are reviewing competing summary judgment
motions, we must consider the evidence in the light most favorable to Brazzel
and Bandera Drilling.  See City of Keller, 168 S.W.3d at 827. 
This requires that we assume that their actions were done strictly for the
employees= benefit and
not as part of the transaction.








The
customer introductions cannot be similarly discounted.  There is no dispute
that Bandera Drilling=s
salesman, Gober, introduced Sledge and Armour to its customers.  Brazzel argues
that this is immaterial because Sledge and Armour already knew Bandera Drilling=s customers and because
this information is publicly available.  Brazzel=s
explanation ignores the practical significance of Gober=s introductions.  There is a critical
distinction between having a list of Bandera Drilling=s customers and being personally introduced to
them by Gober.  Drilling is a personal services business, and relationships and
trust are paramount.  Gober=s
introductions were an endorsement of Sledge and Armour.  Even if Sledge and
Armour had already met or knew Bandera Drilling=s
customers, that endorsement had value.  Furthermore, it cannot be explained
away as a mere accommodation.  These introductions undercut Bandera Drilling=s future competitiveness in
West Texas because they encouraged customers to transition to another drilling
company.

Brazzel=s characterization of the
purchase agreement also fails to account for the shareholder and director
consents that Brazzel and his wife signed[2]
and the Texas Comptroller=s
determination that no sales tax was due because of the Occasional Sales Rule. 
Under this rule, the sale of a business or an identifiable segment of a
business is exempt from sales tax.  34 Tex.
Admin. Code ' 3.316(d)
(2002) (Tex. Comptroller of Public Accounts, Sale of a business or an
identifiable segment of a business).  For the rule to apply, the entire
operating assets of the business or an identifiable segment of the business
must be sold in a single transaction to a single purchaser.  Id. 
Brazzel makes much of the fact that the sale was funneled through Bandera
Supply.  Sledge Drilling responds that this is of no moment because Bandera
Supply=s assumed name
certificate had previously expired.  Regardless of why the dba reference was
included in the agreement, it is undisputed that Brazzel had operated his
drilling business as a separate entity; that, after the agreement was
consummated, he had no drilling rigs; and that over half of his employees were
now employed by Sledge Drilling.  The comptroller=s
determination that Brazzel sold at least an identifiable segment of his business
has ample support.  Consequently, the parties=
actions evidence more than a mere equipment sale.








The
parties=
post-execution actions, however, do not end the analysis because the contract=s language is ultimately
controlling.  See E. Montgomery County Mun. Util. Dist. No. 1 v. Roman
Forest Consol. Mun. Util. Dist., 620 S.W.2d 110, 112 (Tex. 1981) (conduct
of the parties is ordinarily immaterial when determining the meaning of an
unambiguous instrument).[3]  A restraint
is not ancillary to a contract unless it is designed to enforce a contractual
obligation of one of the parties.  Light, 883 S.W.2d at 647 (citing with
approval Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 739-41
& n.3, 744-46 (1988) (Stevens, J., dissenting))[4];
see also DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 682 (Tex. 1990)
(the otherwise enforceable agreement must give rise to the interest worthy of
protection by the covenant not to compete).  Bandera Drilling transferred
goodwill when it introduced Sledge and Armour to its customers B but it was not
contractually obligated to do so.  Nor was it contractually obligated to take
any action to facilitate the transition of any of its employees to Sledge
Drilling.  

Sledge
Drilling concedes that there was no express contractual obligation but contends
that these were illusory promises that became binding obligations when
performed.  The Texas Supreme Court has held that an illusory promise can
furnish consideration for a covenant not to compete when the promise is
performed.  See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209
S.W.3d 644, 651 (Tex. 2006).  But there are two principle differences between
that case and the present situation.  First, in Sheshunoff, the illusory
promise was contained in the written contract.  The actions upon which Sledge
Drilling relies were not described in the purchase agreement.  Second, in Sheshunoff,
performance of the illusory promise provided mutuality.  The employer made an
illusory promise to provide training and confidential information.  When that
promise was kept, enforcement of the covenant followed because the employer had
provided consideration for the employee=s
reciprocal promise.  Here, the post-execution actions were taken by Brazzel or
Bandera Drilling.  Because they are the restrained parties, their actions, by
definition, cannot provide mutuality.








Sledge
Drilling alternatively argues that the covenant is enforceable because Brazzel
and Bandera Drilling=s
promise of future performance can be inferred.  The Texas Supreme Court has
held that a covenant not to compete is enforceable if the agreement to furnish
consideration for that covenant can be inferred because of the nature of the
contract.  See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
No. 07-0490, 2009 WL 1028051 (Tex. April 17, 2009).  In Fielding, an
accounting and consulting firm hired a CPA to work as a senior manager in its
tax department.  The employment agreement included a covenant not to compete. 
Unlike Sheshunoff and Light, the employer made no express promise
to provide the CPA with confidential information, but the court found that,
because he was being hired to perform work that required the receipt of
confidential information, this promise could be inferred.  Id. at *5.

The
purchase agreement in this case supports no similar inference.  The extrinsic
evidence makes clear that Sledge Drilling intended to operate in West Texas and
that it effectively acquired a West Texas going concern, but the contract=s written terms would have
been equally satisfied if Sledge Drilling had taken the rigs and equipment
overseas or if Bandera Drilling had refused to make any introductions or
provide any personnel information.  Cf. id. at *6 (AThe circumstances
surrounding Fielding=s
employment indicate that his employment necessarily involved the provision of
confidential information by Mann Frankfort before Fielding could perform the
work he was hired to do.@).

If
Bandera Drilling and Brazzel were required to do nothing beyond the express
terms of the contract, the covenant is a naked restraint of trade and is,
therefore, unenforceable.  See Light, 883 S.W.2d at 647 (covenants
cannot be a stand-alone promise lacking any new consideration).  It can be
argued that equity requires implying the terms necessary to make the covenant
enforceable because Brazzel is otherwise allowed to violate an agreement that
he helped draft (and he retains all of the money he received for signing it)
simply because an Ai@ was not dotted or a At@ was not crossed.  This is no less true
considering that Brazzel=s
justification for violating the covenant flies in the face of the facts and
that it is apparent he chose to do so because he had an excess rig and thought
he could without liability.  Terms are not to be implied in a contract because
they are reasonable but because they are necessarily involved in the
contractual relationship and are such that the parties must have intended them
and failed to express them only because of sheer inadvertence or because they
are too obvious to need expression.  See Fielding, 2009 WL 1028051, at
*5.  The conveyance of Bandera Drilling=s
business goodwill cannot be inferred because it does not meet this test.








Finally,
Sledge Drilling contends that the assignment=s
reference to intangible rights makes the covenant enforceable.  The assignment
and bill of sale conveyed Aall
of [Bandera Drilling=s]
rights, title and interest, tangible and intangible@ in the six rigs and associated equipment. 
Sledge Drilling argues that the only reasonable interpretation of this document
is that Bandera Drilling transferred current and prospective relationships with
rig employees and customers and intellectual property in the form of employee
personnel files.  Sledge Drilling does not contend that the employees
themselves were assigned but notes that, at the time of the sale, there was a
small pool of qualified employees and contends that it had a legitimate
business interest in retaining Bandera Drilling=s
former employees to staff its rigs.  Bandera Drilling=s introductions, the transfer of at least a
portion of the rig hands=
personnel files, and Bandera Drilling=s
promise not to compete in West Texas facilitated that business interest.

The
intangible rights Sledge Drilling describes could support a covenant because
they could be part of a business=s
goodwill, but they were not conveyed by the assignment because they are not
intrinsic to the rigs or equipment.  They are, instead, associated with an
ongoing concern.  What intangible rights the assignment conveyed is not clear,
but Sledge Drilling does not contend that there was anything unique about the
physical assets it purchased that would provide a competitive advantage. 
Consequently, the assignment cannot provide the mutuality required to make the
covenant enforceable.

The
trial court erred when it found that the reformed covenant not to compete was
enforceable.  The trial court=s
judgment is reversed, and the cause is remanded for further proceedings not
inconsistent with this holding or the parties=
settlement agreement.  This holding makes it unnecessary to consider Brazzel
and Bandera Drilling=s
second issue.

                                                                    IV. 
Holding 

The
judgment of the trial court is reversed, and the cause is remanded.

 

 

RICK STRANGE

JUSTICE

 

August 6, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]That clause reads:

 

This Agreement represents the entire agreement of the Parties and
supersedes all prior written or oral agreements.  The terms are contractual and
not mere recitals.





     [2]See Tex. Bus. Orgs. Code Ann. ' 21.455 (Vernon 2008) (requiring approval by the
directors and shareholders of a corporation when it sells all or substantially
all of the assets of the corporation).





     [3]The agreement
disclaims the parties= ability to informally modify their agreement
providing:

 

This Agreement may not be amended, altered, modified, or changed in any
way except in a writing signed by all the Parties specifically referencing this
Agreement.  Without limitation, course of performance specifically does not
modify or waive any provision herein.





     [4]In the
employee/employer context, the supreme court has recognized two requirements
for making this determination:  (1) the consideration given by the employer in
the agreement must give rise to the employer=s
interest in restraining the employee from competing and (2) the covenant must
be designed to enforce the employee=s
consideration or return promise in the agreement.  See  Mann Frankfort Stein
& Lipp Advisors, Inc. v. Fielding, No. 07-0490, 2009 WL 1028051, at *4
(Tex. April 17, 2009).  Those requirements cannot be applied verbatim to
commercial transactions such as this because the restrained party is providing
rather than receiving the protectable interest.  But the court=s concern that naked restraints of trade be avoided can
be addressed.