**TEXAS INTERNATIONAL PRODUCTS et al., Appellants,**

v.

**MUSTEX, INC., Appellee.**

No. 16420.

Court of Civil Appeals of Texas.

Fort Worth.

April 26, 1963.

Rehearing Denied May 24, 1963.

LeLaurin, Chamberlin, Guenther & Murry, San Antonio, Rodgers & Stephens and Ronald Stephens, Graham, for appellants.

Jennings, Montgomery & Dies, and Elton Montgomery, Graham, for appellee.

MASSEY, Chief Justice.

The appeal is from an order overruling pleas of privilege of the corporate defendant and of two individual defendants.

Judgment is reversed and the cause remanded for another trial.

Mustex, Incorporated, plaintiff in the cause, was at all times domiciled in Young County, Texas. Defendant Texas International Products, a Texas Corporation, had its domicile in Harris County. Defendants Herman Keuhn and Zelman Keuhn, officers of Texas International Products, had their domicile in Harris County. In the plaintiff's petition were allegations that plaintiff, "at the special instance and request of defendants, sold and delivered to them certain goods, wares and merchandise more particularly described in the verified account heretofore referred to, in consideration whereof defendants promised and became bound and liable to pay to plaintiff the prices charged therefor in said account set out, * * *." Thereafter plaintiff alleged that "A portion of the account sued upon is secured by a mechanic's lien fixed by affidavit made pursuant to Article 5483 et seq. of the Revised Civil Statutes of the State of Texas, * * *. The plaintiff would show the court that the above described mechanic's and materialmen's lien was established in accordance with the laws of the State of Texas; that it furnished certain goods, wares and merchandise to the defendants under contracts and agreements entered into at various times; that the lien is in full force and effect, is now valid and subsisting, and is subject to being foreclosed in Young County, Texas."

Prayer for relief in plaintiff's petition sought judgment in sworn account against all and several of the defendants, for foreclosure of the alleged lien against the goods, wares and merchandise, for attorney's fees and costs.

Each of the defendants filed a plea of privilege. By its controverting affidavit to the plea of privilege of the corporate defendant plaintiff realleged the lien asserted against the property in question and for which foreclosure was sought, and in connection therewith asserted that venue was properly fixed in the county of the suit under the provisions of Vernon's Ann.Tex. St. art. 1995, "Venue, general rule", and the exception thereto recited in subdivision 12, "Lien.—A suit for the foreclosure of a mortgage or other lien may be brought in the county where the property or any part thereof subject to such lien is situated."

Additionally, plaintiff alleged that the "sales made by plaintiff" were actually made and contracted for in the county of the suit, and asserted that venue was properly fixed in the county of the suit under exception 23, "Corporations and Associations", to the statute's general venue provisions. The same character of claim of venue was asserted under exception 5, "Contract in writing".

To the pleas of privilege of the individual defendants plaintiff asserted that venue was properly fixed in the county of the suit, in view of its right to maintain venue therein as to the corporate defendant, under exception 29a, "Two or more defendants", to the statute's general venue provisions, as well as under the exceptions pleaded in its controverting affidavit to the plea of privilege of the corporate defendant, except exception 23, "Corporations and Associations", obviously inapplicable.

From the statement of facts it appears that the corporate defendant, Texas International Products, is or was in the business of marketing premolded fiberglass fallout shelters. The "molds", or part thereof, used in the manufacture of the shelters were apparently the property of the corporate defendant. Through some arrangement Mustex, Inc., the plaintiff, manufactured the shelters. Under the direct testimony introduced by plaintiff a number of shelters manufactured by it were "sold" to the defendants. Some shelters so manufactured had been "taken" by the defendants and removed from the premises of the plaintiff or had been "accepted" on out-of-county deliveries. Approximately twelve shelters had been manufactured by plaintiff which remained in its warehouse in Young County. It was on these shelters that plaintiff had attempted to fix the lien upon which its suit sought foreclosure.

It is obvious from the record that the corporate and individual defendants are contending they never contracted to receive any of the twelve shelters, nor to have the plaintiff manufacture them and that the shelters ever were and remained the property of plaintiff. Under the proof of the plaintiff there was no evidence whatever of any "delivery" to defendants, or any of them, of any of the twelve shelters. Plaintiff's witness was allowed to testify over objection that plaintiff "sold" them to defendants. There was no proof that defendants, or any of them, had so contracted with the plaintiff that they held title to or the right of possession of the shelters before there had been any actual physical delivery thereof, or any act of acceptance by defendants. Without regard to any importance of the state of the record for purposes of the pleas of privilege, it is obvious therefrom that it would be more profitable to plaintiff to have the shelters sold by legal process, with a credit thereby placed against the account it is claiming against the defendants, than would be the case were it to agree with the defendants that the shelters were its own property.

Upon the matter of the lien which plaintiff purported to have fixed in accordance with law, and on the strength of which it sought to effect a foreclosure by its suit, we necessarily must examine the same. V.A.T.S. Title 90, "Liens", Ch. 5, "Farm, Factory and Store Operations", Art. 5483, "Lien prescribed", reads in part as follows: "Whenever any * * * artisan, craftsman, factory operator, mill operator, mechanic * * * *may labor or perform any service* in any * * * factory, mine, quarry or mill of any character * * * under or by virtue of any contract or agreement, written or verbal, with any person, employer, firm or corporation * * *, in order to secure the payment of the amount due or owing under such contract or agreement * * * *the hereinbefore mentioned employees* shall have a first lien upon all products * * * goods, wares, merchandise * * *, or thing or things of value of whatsoever character *that may be created in whole or in part by the labor* * * *." (Emphasis supplied.) Art. 5486, "Liens, how fixed", prescribes the

method by compliance with which such character of lien may be lawfully fixed. The method was that with which plaintiff complied.

■ Employers of labor are not afforded any right to a lien because of the labor of employees. The only right to a lien as prescribed by Art. 5483 is one in behalf of an individual who has performed labor or rendered personal services. A corporation cannot perform personal services. "Labor done" is but one form of "personal services rendered". Van Zandt v. Fort Worth Press, 1962, Tex., 359 S.W. 2d 893. Since a corporation can neither perform labor nor render personal services Mustex, Inc., plaintiff in the suit under consideration, is effectively precluded from claiming any right to any lien contemplated by the article. Plaintiff's pleadings, even if conceded to allege that it "labored" or "performed some service" in the manufacture of the shelters for the defendants, or any of them, cannot be given any effect for the "lien" thereby purportedly alleged does not fulfill the requirements of the venue statute's exception 12, "Lien", in that it does not allege a lien which is a legally valid lien. The lien purportedly fixed and which plaintiff sought to have foreclosed was not one of which it could claim any benefit, for Mustex, Inc., was not within the class of persons contemplated by Art. 5483.

Furthermore, we believe that plaintiff's suit on sworn account is necessarily inconsistent with any claim for the character of right contemplated to be secured by any lien predicated upon the provisions of Art. 5483. Also, since the defendants disclaimed any title or interest in the property upon which lien foreclosure was sought and there was no proof that any defendant ever held title to any interest therein we seriously doubt the efficacy of plaintiff's proof in respect to the property phase.

■ The Supreme Court has now given its express approval to the line of cases which hold that a plaintiff who pleads a lien and shows the location of the property, or a part thereof, in the county need not establish by extrinsic evidence that he has a lien enforceable against the defendant. Morgan Farms v. Murray, 1950, 149 Tex. 319, 233 S.W.2d 123. The lien so plead, however, must be a lien of which the plaintiff is entitled to claim protective benefit.

■ On submission of the case before this court it was conceded by the attorney for the plaintiff that on the record presented to us he had not established a right to hold venue in the county of the suit unless we agreed upon the applicability of the general venue statute's exception 12, "Lien". We have not agreed. Plaintiff's attorney insisted in that event that a remand was proper rather than a rendition directing change of venue. It is particularly noted that plaintiff claimed a right to retain venue under exception 23, "Corporations and Associations". The case of Jackson v. Hall, 1948, 147 Tex. 245, 214 S.W.2d 458, dealt with a case where such was the exception relied upon but where the plaintiff had failed to show that his cause of action or a part thereof arose in the court of suit. It was held therein that the case was not fully developed and was tried upon the wrong theory, not only by the attorneys but by the trial judge, for otherwise the trial court would have transferred the cause. We agree that as applied to the corporate defendant, Texas International Products, our obedience to the principle of law declared in Jackson v. Hall will require a remand rather than a reversal.

■ Any right the plaintiff might have to hold the corporate defendant under exception 23, "Corporations and Associations", could not carry with it any subsidiary right to hold the individual defendants under exception 29a "Two or more defendants", unless they were shown to be "necessary parties" along with the corporate defendant in the same manner as required under exception 12 "Lien". What we mean to say is that the plaintiff had the duty on the hearing already had to show its

right to hold the individual defendants, and that the duty would not differ in any way on any new hearing. This duty was not discharged on the hearing already had, and plaintiff's pleadings do not show that the individual defendants are necessary parties to its suit against the corporate defendant. See Clark, Venue in Civil Actions, Ch. 29a, p. 179, "Two or More Defendants", § 6, "Proof Necessary to Sustain Venue".

■ However, by the plaintiff's pleadings and controverting affidavit a direct cause of action against the individual defendants was alleged under the general venue statute's exception 5, "Contract in writing". This was not proved. The trial was on the lien theory. This we have held was the wrong theory. A correct theory would be that the individual defendants were bound on an instrument in writing. It may be that plaintiff will be able on the occasion of another trial to establish venue under exception 5, "Contract in writing". Under the principle of law adhered to in Jackson v. Hall, supra, it appears that plaintiff is entitled to make the attempt at another hearing.

Judgment is reversed and the cause remanded for a new trial.

## ON MOTION FOR REHEARING

In our opinion we directed a remand of the case for further development, if within the power of Mustex, Incorporated. Appellants have filed a motion for rehearing in which they level a strenuous attack upon our interpretation of Jackson v. Hall, 1948, 147 Tex. 245, 214 S.W.2d 458, and insist that our judgment should be one of reversal and rendition rather than one which merely remands the case for another trial. In connection therewith appellants point out that Mustex was not prevented from fully developing its case on the plea of privilege, nor did it omit to do so as a result of an erroneous decision of the trial court, but that any failure on the part of Mustex in relation to development of its evidence was the result of a decision or election on its own part.

It is worthy of note that this court had occasion to write on this same question on May 10, 1963, in the case of Central Surety and Insurance Corporation v. First National Bank of Fort Worth.■ The opinion in that case has not yet had time to appear in the reporter. It may well be that it will be published about the same time as our opinion in the instant case.

Therein we stated, "It is to be noted that the Supreme Court's action in Jackson v. Hall was taken pursuant to its having granted leave to file a petition for mandamus against the Justices of the Court of Civil Appeals to compel a judgment of remand upon reversal of a trial court's judgment overruling a plea of privilege, rather than the rendition by which the case was ordered transferred.

"Our interpretation of the holding in Jackson v. Hall is that as applied to appeals in general, and those from orders overruling pleas of privilege in particular, any proper judgment of an appellate court which reverses the judgment of the trial court should be one which incorporates therein an order remanding the cause to the trial court, rather than one of rendition, when the reversal is occasioned by a lack of evidence in support of the judgment of the trial court,—*unless* it clearly appears that the case was fully developed, i. e., *unless* it clearly appears that there was no evidence available to be introduced in the trial court which would have supplied such 'lack'."

The statement quoted has complete application to the question in the instant case. If we err the law affords a method of obtaining a remedy.

Motion for rehearing is overruled. No additional motion for rehearing will be entertained.