

**NUMBER 13-08-457-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**BARBARA O'NEAL,** **Appellant,**

**v.**

**THOMAS FOREHAND,** **Appellee.**

### On appeal from the 36th District Court
### of Live Oak County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Vela**

This is an appeal from a judgment entered by the trial court in favor of appellee Thomas Forehand and against his former wife, appellant, Barbara O'Neal, in a suit involving their 1991 divorce decree. By five issues, O'Neal complains that she was deprived of her right to a jury trial, that the evidence did not support the trial court's

findings, and that the trial court improperly awarded attorney's fees. We affirm.

## I. BACKGROUND

On August 21, 1991, the judge of the 36th District Court in Live Oak County entered a divorce decree ending the marriage of O'Neal and Thomas. The decree, agreed upon by the parties, provided for potential future conveyances to O'Neal of post-divorce working interests and overriding royalty interests acquired by Thomas if: (1) Thomas did not pay money for the interest acquired; (2) Thomas paid less for the interest than he would have if the interest had been acquired by a third party; or (3) Thomas acquired the interest through personal services rendered by him, in whole or in part.

On May 19, 2006, O'Neal filed an original petition in the 156th District Court urging breach of contract, conversion and breach of fiduciary duty claims based upon Thomas's alleged refusal to comply with certain portions of the divorce decree with respect to post-divorce working interests and overriding royalty interests acquired after the parties' divorce. Specifically, O'Neal urged that the parties entered into a marital property contract wherein Thomas "agreed that with respect to working interests and/or overriding royalties which he would acquire. . . for less than full and adequate consideration post divorce, the parties would own equal interests as their separate property." She argued that she is owed one-half of an apportioned share of the overriding royalty interests received by Nueces Oil through several assignments that occurred after their divorce.

Prior to trial, the parties agreed to consolidate the case in the 36th District Court, the court where the divorce action had been filed. O'Neal had previously requested a jury trial. Thomas objected, taking the position that a jury would not be proper because the suit was one to enforce the divorce decree and a jury trial is not proper under section 9.005 of the

Texas Family Code.  *See* TEX. FAM. CODE ANN. § 9.005 (Vernon 2006).[1]  The 36th District

Court entered an order determining that O'Neal's suit was a claim for enforcement of the

divorce decree and the trial court removed the case from the jury docket.

After a non-jury trial, the trial court entered judgment in favor of Thomas.

Thereafter, the trial court entered findings of fact and conclusions of law.  The trial court

found that:

> 1) the divorce decree provided that Thomas agreed that if he acquired any
> working interest and/or overriding royalty interests after the entry of the
> decree for less than adequate consideration, either personally or through any
> company in which he had any interest, then one-half of the interest acquired
> would be assigned, transferred or held in trust for O'Neal;
>
> 2) Thomas was a part owner of Nueces Oil Company;
>
> 3) Nueces Oil acquired either working interests or overriding royalty interests
> in oil and gas leases after the decree;
>
> 4) There was no evidence that any working interests or overriding royalty
> interests acquired by Nueces Oil after the divorce were acquired for less than
> adequate consideration;
>
> 5) Thomas performed personal services to Nueces Oil;
>
> 6) There was no evidence that any of his personal services were
> consideration for the acquisition of any working interests or overriding royalty
> interests acquired by Nueces Oil after the entry of the divorce decree.

## II. ISSUE ONE

### A. Factual Background

O'Neal complains in her first issue that the trial court erred by denying her

constitutional right to submit her claims to a jury.  Prior to trial, Thomas objected to

---

[1]Section 9.005 states: "A party may not demand a jury trial if the procedures to enforce a decree of divorce or annulment provided by this subchapter are invoked".  TEX. FAM. CODE ANN. § 9.005 (Vernon 2006).

3

O'Neal's request for jury trial because section 9.005 of the Texas Family Code precluded her from demanding a jury trial. *Id.* The trial court heard arguments on Thomas's motion, requested additional briefing, took the matter under advisement, and later determined that the action pleaded was one for enforcement of a divorce decree under the family code. *See id*. Prior to the court's ruling, counsel for O'Neal had filed an agreed motion requesting that her case be consolidated in the 36th District Court, the court where the decree of divorce was entered because "section 9.001, Texas Family Code, states that suits involving a prior decree of divorce be filed in the court that rendered the judgment." When the case was called for a non-jury trial, counsel made no objection to proceeding without a jury present.

## B. **Preservation and Standard of Review**

We review the trial court's denial of a jury trial for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). In conducting an abuse of discretion review, we examine the entire record. *Id.* We find an abuse of discretion only when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

A party is required to act affirmatively in order to preserve the right to complain on appeal that he was denied his perfected right to a trial by jury. *Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex. App.–Dallas 1993, no writ). If a trial court proceeds to trial without a jury, the party must, in order to preserve any error by the trial court, "either object on the record to the trial

4

court's action or indicate affirmatively in the record it intends to stand on its perfected right to a jury trial." *Id.* This is because "the right in a civil case is not self-executing: to invoke and perfect the right to a jury trial in a civil case a party must first comply with the requirements of rule 216;" once perfected, the right to a jury trial still may be waived expressly or by a party's failure to act. *Id*. at 387-88.

## C. Analysis

The record before us does not show that O'Neal objected to the case going forward without a jury or that she indicated in any way to the trial court that she intended to stand on her right to a jury trial. It was Thomas who originally complained to the trial court about the propriety of a jury trial. Thomas's objection was heard on October 25, 2006. The non-jury trial was held on March 27, 2008. Because O'Neal did not inform the trial court of her intent to stand on her right to a jury trial, error, if any, has not been preserved. TEX. R. APP. 33.1(a). Regardless, even if O'Neal had preserved error, we do not believe the trial court abused its discretion. The agreed motion, prepared by O'Neal's counsel, showed that she was invoking the provisions of the family code. Therefore, she was precluded from demanding a jury trial. *See* TEX. FAM. CODE ANN. § 9.005. Further, the record does not reflect any act by the trial court during the course of the trial that appeared either arbitrary or unreasonable. O'Neal's first issue is overruled.

### III. ISSUES TWO THROUGH FOUR

## A. Factual Background

Thomas Forehand is an owner of Nueces Oil Company. O'Neal was an owner, but sold her interest in the company in July 1992. At the time of trial, Thomas owned a one-

5

third interest in Nueces Oil, his son, Mikal, owned one-third and his daughter, Robin, also owned one-third. At trial, O'Neal, Thomas, and Mikal testified as witnesses. O'Neal introduced portions of the video depositions of Mikal and Thomas. O'Neal's counsel testified regarding attorney's fees. Thomas's attorney also testified regarding his attorney's fees.

The dispute made the basis of O'Neal's suit arises from two 1992 leases. Thomas testified that Nueces Oil acquired the two leases in 1992, referred to as the Herring leases. The consideration for the Herring leases was a one-sixth royalty, customary terms and obligations of an oil and gas lease and a cash bonus. Thomas testified that in early 2004-2005 Nueces Oil entered into farmout agreements[2] with AMPAK Oil Company and OGGP Partners.

Mikal testified that to develop these prospects, AMPAK and OGGP each entered into a farmout agreement with Nueces Oil that covered its 22% leasehold estate in the Herring lease. AMPAK and OGGP drilled commercially productive wells. Nueces Oil assigned each an interest in the net revenue and reserved an overriding royalty to itself. Mikal stated that Nueces Oil received one hundred dollars an acre to execute the farmout agreements. According to Mikal, his father did not perform any personal services with respect to the agreement. In fact, he said that he was unaware of any personal service performed by Thomas.

O'Neal testified that she had not been assigned overriding royalty interest in the

---

[2]Thomas described a farmout agreement as one "when you own a leasehold, as opposed to owning minerals and royalties. You own a leasehold that you acquired from someone that holds the mineral and oil royalties. And you want to turn that leasehold—push it off to—a portion over to a company to get some wells drilled."

6

wells in issue.

## B. STANDARD OF REVIEW

In her second, third, and fourth issues, O'Neal argues that she established her entitlement to a share of the interests earned as a matter of law, or that the trial court's findings that she was entitled to nothing were against the great weight and preponderance of the evidence.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991); *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex. App.–Dallas 1997, writ denied) (en banc). Fact findings are not conclusive when a complete reporter's record appears in the record. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex. App.–Houston [14th Dist.]), *writ ref'd n.r.e.,* 699 S.W.2d 199 (Tex. 1985) (per curiam). We review a trial court's fact findings for legal and factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review the conclusions drawn from the facts to determine their correctness. *Ashcraft,* 952 S.W.2d at 910. The standard of review for claims of legal and factual sufficiency of the evidence govern non-jury trials on the merits. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach

7

the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Francis,* 46 S.W.3d at 242. We set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*; *see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

## C. Analysis

### 1. Issues Two and Three

By her second and third issues, O'Neal urges that the trial court erred in failing to find that: (1) Thomas did not pay money for the working and/or overriding royalty interests Nueces Oil acquired; and (2) Thomas provided personal services that resulted in Nueces Oil acquiring working and/ or overriding royalty interests. According to O'Neal, the three conditions that would constitute "less than full consideration" under the decree are that Thomas: (1) did not pay money for interest so acquired; (2) paid a sum less than the interest could have been acquired by a third party; or (3) he acquired the interest for personal services he rendered.

At the end of trial, counsel for O'Neal conceded that there was no evidence that Thomas paid a lesser sum than "could have been acquired by a third party," and

8

abandoned that theory. Counsel for O'Neal stated at trial that the scenario he was relying upon was that Thomas was required to pay O'Neal because his interest had been acquired because of the personal services he rendered. The trial court found that Thomas had rendered personal services to Nueces Oil, but there was no evidence that the personal services were in consideration for interests acquired by Nueces Oil. The trial court made no finding with regard to whether Thomas had paid money for the interest Nueces Oil acquired.

The evidence at trial was that Nueces Oil, not Thomas, had acquired an overriding royalty interest. The issue before the trial court was not whether Thomas, himself, did or did not pay money. Regardless, the evidence at trial was that only Nueces Oil acquired an overriding royalty interest. In fact, there was no evidence that Thomas individually paid any money for the interest Nueces Oil acquired. The testimony at trial was that Nueces Oil, not Thomas, acquired the leases for consideration and properly reserved to itself an overriding royalty after the wells proved to be commercially productive and an assignment had been made. We overrule issue two.

In her third issue, O'Neal argues that the great weight and preponderance of the evidence established that Thomas provided personal services resulting in Nueces Oil acquiring a working and or overriding royalty interest post-divorce.

At trial, Thomas was asked if he "provided a lot of personal services to sell these deals" to AMPAK. He replied that he provided no personal services, because he was in law school at the time. Mikal testified that his father's personal services "did not come into play" in arranging the farmout agreement. From this testimony, the trial court could have determined that no personal services of Thomas were required in arranging the farmout

9

agreement from which the overriding royalty interests were generated.

O'Neal points to testimony at Mikal's deposition where Mikal testified that he could not make a decision in Nueces Oil Company alone. With regard to AMPAK, Mikal said that his father "was in the loop." Assuming this evidence could be construed to mean that Thomas generally provided personal services to Nueces Oil, there was, however, no evidence that the services were consideration for the reservation of the overriding royalty interests involved in this case. The trial court heard the evidence before it and was in the best position to judge the credibility of the witnesses. O'Neal did not establish as a matter of law that Thomas paid no money for the mineral interests acquired by Nueces Oil or that his personal services resulted in Nueces Oil acquiring the interests at issue. The trial court's findings were not against the great weight and preponderance of the evidence. We overrule issues two and three.

### 2. Issue Four

O'Neal argues by her fourth issue that the trial court erred because she established as a matter of law that Nueces Oil provided personal services that resulted in it obtaining working and/or overriding royalty interests and that the trial court's failure to so find is against the great weight and preponderance of the evidence. O'Neal claims that it is undisputed that the oil company provided personal services. In general, a corporation cannot perform personal services. *Tex. Int'l Prods. v. Mustex, Inc.*, 368 S.W.2d 27, 30 (Tex. App.–Fort Worth 1963, no writ). Regardless, the issue in this case was whether Thomas performed personal services, not Nueces Oil. The pertinent provision of the divorce decree stated ". . . and/or if such interest is acquired for personal services rendered by *him*, in whole or in part." (emphasis added). It does not appear that this

10

issue was raised by O'Neal or considered by the trial court. Therefore, it is waived TEX. R. APP. P. 33.1. We overrule O'Neal's fourth issue.

## V. ATTORNEY'S FEES

O'Neal argues by her fifth issue that the attorney's fees awarded to Thomas were improper because no statute or contract allows such recovery. She also argues that the trial court erred in refusing to make additional findings of fact with regard to the attorney's fee issue as well as other points in the case.

After hearing evidence by the parties, the trial court awarded Thomas $29,425.00 in attorney's fees. The trial court did not make specific findings of fact or conclusions of law with respect to the attorney's fee award, except to state that Thomas should be awarded attorney's fees pursuant to "appropriate civil statutes and the Family Code."

After the trial court files original findings of fact and conclusions of law, any party may request specified additional or amended findings. TEX. R. CIV. P. 298. The trial court shall file any additional findings and conclusions that are appropriate within ten days after a request is filed. *Id*. If the record shows that the complaining party did not suffer injury, the trial court's failure to make such additional findings does not require reversal. *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 277 (Tex. App.–Houston [14th Dist.] 1999, pet. denied); *see Tamez v. Tamez,* 822 S.W.2d 688, 692 (Tex. App.–Corpus Christi 1991, writ denied). To obtain a reversal, appellant must show from the record that the trial court's refusal to file additional findings of fact and conclusions of law, as requested, was reasonably calculated to cause and did cause rendition of an improper judgment. *Doncaster v. Hernaiz,* 161 S.W.3d 594, 608 (Tex. App.–San Antonio 2005, no pet.);

11

*Tamez,* 822 S.W.2d at 693. If the trial court's refusal to make additional findings does not prevent an adequate presentation on appeal, there is no reversible error. *Doncaster,* 161 S.W.3d at 608. The issue is whether the circumstances are such that appellant is forced to guess at the reasons for the trial court's decision. *Id.*

Here, while O'Neal filed documents requesting additional findings, she did not actually specify the findings she wanted the trial court to make. Her request looked more like proposed jury issues. Regardless, the trial court's finding was that Thomas was awarded attorney's fees pursuant to the family code and other appropriate civil statutes. The family code expressly provides for an award of attorney's fees in proceedings to enforce the decree. TEX. FAM. CODE ANN. § 9.014 (Vernon 2006); *In re Marriage of Malacara,* 223 S.W.3d 600, 603 (Tex. App.–Amarillo 2007, no pet.). O'Neal argued in this Court that the fees were not authorized under the family code or under contract law and briefed those issues on appeal. She also thoroughly briefed why she believed Thomas was not entitled to attorney's fees as sanctions.

We review the trial court's award of attorney's fees for an abuse of discretion. *See Chavez v. Chavez*, 12 S.W.3d 563, 566 (Tex. App.–San Antonio 1999, no pet.) (involving the review of award of attorney's fees in an enforcement proceeding is under an abuse of discretion standard); *Schneider v. Schneider,* 5 S.W.3d 925, 930 (Tex. App.–Austin 1999, no pet.) (same). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding principles. In his answer, Thomas requested attorney's fees under the family code, although he pleaded for fees under the

wrong section of the code.[3]  He also pleaded generally for attorney's fees.  The trial court had authority under section 9.014 to award attorney's fees in this action.  *See* TEX. FAM. CODE ANN. § 9.014.  A general request for attorney's fees in the prayer of the pleading is itself sufficient to authorize the award of attorney's fees.  *Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.–Dallas 2005, no pet.).  The trial court did not err in failing to make additional fact findings.  However, even if the trial court did err, the error was harmless because O'Neal was able to adequately present her issues to this Court.  Accordingly, the trial court did not abuse its discretion in awarding attorney's fees.  We overrule O'Neal's fifth issue.

## VI.  CONCLUSION

The judgment of the trial court is affirmed.


ROSE VELA
Justice



Memorandum Opinion delivered and
filed this 2nd day of July, 2009.

---

[3]Thomas improperly pleaded for attorney's fees under sections 106.001 and 106.002 of the family code.  TEX. FAM. CODE ANN. §§ 106.001-.002 (Vernon 2008).  These sections deal with attorney's fees and costs in suits involving the parent-child relationship.